## C. P. WILSON AND DAN ELLIS v. THE STATE.

No. 13701.   Delivered March 11, 1931.

The opinion states the case.

*Taylor, Muse & Taylor,* of Wichita Falls, for appellants.

*Sam B. Spence,* Dist. Atty., and *Geo. W. Anderson,* Asst. Dist. Atty., both of Wichita Falls, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is accepting a bribe; the punishment, confinement in the penitentiary for two years.

It was alleged in the indictment that appellants were "the duly qualified and acting deputy constables of precinct No. 1 of Wichita County, Texas, and peace officers." Appellants made a motion to quash the indictment on the ground that deputy constables are not peace officers within contemplation of article 36, Code of Criminal Procedure, which reads as follows: "The following are 'peace officers': the sheriff and his deputies, constable, the marshal or policemen of an incorporated town or city, the officers, non-commissioned officers and privates of the State ranger force, and any private person specially appointed to execute criminal process."

Appellants were prosecuted under the provisions of article 174, Penal Code, which denounces as an offense the acceptance of or agreement to accept a bribe by any sheriff or other executive or peace officer. Article 6878, Revised Statutes 1925, provides for the election of constables. Article 6879, Revised Statutes 1925, reads as follows: "When in any such justice precinct there may be a city of 8,000 or more inhabitants, such constable may appoint no more than two deputies who shall qualify as required of deputy sheriffs; and provided, that, when in any such justice precinct there may be a city of 40,000 or more inhabitants, such constable may appoint five deputies and no more, who shall qualify as required of deputies; provided, such constable shall first make written application to the commissioners' court of his county, showing the necessity therefor, giving the name of each proposed appointee, for the approval and confirmation of said court. In justice precincts which do not contain a city of 8,000 or more inhabitants, said constable may appoint no more than one deputy who shall qualify in such manner as is required by law."

Article 6869, Revised Statutes 1925, prescribes the manner in which deputy sheriffs are required to qualify. It is true that article 36 of the Code of Criminal Procedure does not provide that a deputy constable is a peace officer. However, this article was enacted long prior to the time that provision was made for the appointment of deputy constables. We think it was the intention of the Legislature in providing for the appointment of deputy constables to impose upon such officials the duties required of peace officers. If such were not the case the civil statutes

to which reference has been made are without efficacy. Having clothed deputy constables with the power and authority of their principals, was it the intention of the Legislature to exempt such officers from the operation of the statute denouncing as an offense the acceptance of a bribe by a peace officer? We think not. To so hold would give effect alone to the provisions of article 36, Code of Criminal Procedure, without regard to the civil statutes relating to the appointment of deputy constables. The statutes in question were by the Legislature brought forward in the Penal Code, Code of Criminal Procedure and Civil Statutes in the revision of 1925. It is the rule that "all consistent statutes which can stand together, though enacted at different dates, relating to the same subject, * * * are treated prospectively and construed together as though they constituted one act." Lewis' Sutherland Statutory Construction (2nd Ed.) vol. 2, sec. 443. We quote from the text last mentioned, as follows: "Statutes which are not inconsistent with one another, and which relate to the same subject matter, are in pari materia, and should be construed together; and effect should be given to them all, although they contain no reference to one another, and were passed at different times. Acts in pari materia should be construed together and so as to harmonize and give effect to their various provisions. This is especially the case when the acts are passed at the same session. * * * Statutes constituting a system should be so construed as to make that system consistent in all its parts and uniform in its operation."

We quote further: "While all statutes pertaining to crimes and their punishment should be strictly construed, and nothing left to intendment, they should not be so construed as to thwart the evident will and intention of those who enacted them, where that intention is plainly and fairly deducible from the law itself." State v. Bishop, 128 Mo., 373, 384, 31 S. W., 9; Lewis' Sutherland Statutory Construction, vol. 2, 2d Ed., sec. 528. We think it was the plain intention of the Legislature in enacting article 6879, Revised Statutes, to bring deputy constables within the definition of peace officers, and that such officers are amenable to prosecution for accepting a bribe.

In their motion in arrest of judgment, appellants alleged that they were indicted by an illegal grand jury. It appears that the grand jury which indicted appellants had been selected by a jury commission appointed by the judge of the 30th district court. Said grand jury reported at the January term, 1930, of said court. Thereafter, the court adjourned and the grand jury was discharged. After the adjournment of the 30th district court, the judge of the 78th district court entered an order reassembling the grand jury that had served in the 30th district court, and directed the sheriff to summon the members thereof. This appears to have been done pursuant to the provisions of Senate Bill No. 6, chapter 6, Acts of 1915, which provided that the judge of the 78th

district court should have authority at any time he might think it necessary to recall, reassemble and reimpanel the grand jury last impaneled in the 30th district court. The sheriff having summoned the grand jurors· they were sworn and tested as to their qualifications and thereafter duly sworn and impaneled. Appellants had been arrested prior to the impanelment of said grand jury. Their attorney was present when the grand jury was impaneled and requested and secured special instructions to said grand jury relative to the investigation of the offense with which appellants· were charged. No challenge to the array was made.

The Act relating to the reassembling of the grand jury last serving ·in the 30th district court by the judge of the 78th district court was not brought forward in the revision of 1925. Art. 372, C. C. P., provides: "A grand jury discharged by the court for the term may be reassembled by the court at any time during the term. If one or more of them fail to reassemble, the court may complete the panel by impaneling other men in their stead in accordance with the rules provided in this chapter for completing the grand jury in the first instance."

The judge of the 78th district court was without authority under the terms of the foregoing article to reassemble the grand jury theretofore serving in the 30th district court. However, the members composing the grand jury were qualified. They were· sworn and tested as to their qualifications and properly sworn and impaneled as grand jurors. Article 358, C. C. P., provides: "Before the grand jury has been impaneled, any person may challenge the array of jurors or any person presented as a grand juror. In no other way shall objections to the qualifications and legality of the grand jury be heard. Any person confined in jail in the county shall· on his request be brought into court to make 'such challenge.'

Article 359, C. C. P., provides: "By the array of grand jurors is meant the whole body of persons summoned to serve as such before they have been impaneled."

Article 360, C. C. P., reads as follows: "A grand juror is said to be 'impaneled' after his qualifications have been tried and he has been sworn. By 'panel' is meant the whole body of grand jurors."

Article 361, C. C. P., provides: "A challenge to the array shall be made in writing for these causes only:

1. That those summoned as grand jurors are not in fact those selected by the jury commissioners.

2. In case of a grand jury summoned by order of the court that the person who summoned them had acted corruptly in summoning any one or more of them."

Article 506, C. C. P., reads as follows: "A motion to set aside an indictment or information shall be based on one or more of the following causes, and no other:

1. That it appears by the records of the court that the indictment was not found by at least 9 grand jurors, or that the information was not based upon a valid complaint.

2. That some person not authorized by law was present when the grand jury were deliberating upon the accusation against the defendant, or were voting upon the same."

Appellants' attack goes to the organization and the manner of selecting the grand jury. Conceding that the selection and organization were not in strict compliance with statutory requirements, the opinion is expressed that the objection came too late. Appellants were under arrest at the time the grand jury was impaneled. Hence they were not within the exception to the operation of articles 358 and 506, which exception is to the effect that the accused may by motion to quash take advantage of the same question which would have been available in the challenge to the array provided he had not been arrested or the offense had not been committed at the time of impaneling the grand jury which returned the indictment against him. Powell v. State, 99 Texas Crim. Rep., 276, 269 S. W., 443, and authorities cited. Another exception may be found in the decisions holding that the acts of purported grand juries composed of more or less than 12 men may be attacked, even after conviction upon the ground that such bodies are not in fact grand juries but attempted to function as such in violation of article 5, sec. 13 of the State Constitution. Powell v. State, supra; Ex parte Reynolds, 35 Texas Crim. Rep., 437, 34 S. W., 120. This exception has no application in the present case. A third exception to the application of the provisions of articles 358 and 506 may be found where the record shows an arbitrary disregard of the statutory provisions relating to the manner of selecting grand jurors. The instant case fails to fall under this exception. In view of the fact that the case at bar falls within none of the exceptions, we are constrained to hold that articles 358 and 506 have application, and that the attack upon the grand jury by motion in arrest of judgment cannot be upheld. Powell v. State, supra.

Over timely and proper objection, the court charged the jury as follows: "You are, however, instructed that such corroborative testimony need not be direct and positive, independent of the testimony of said J. J. Crow; but such facts and circumstances as tend to support his testimony and which satisfy the jury that he is worthy of credit as to the facts essential to constitute the offense of bribery as hereinbefore defined to you will fulfill the requirements of the law as to corroboration. It is for you to say from all the evidence before you whether he has been sufficiently corroborated."

In Walker v. State, 94 Texas Crim. Rep., 653, 252 S. W., 543, the court instructed the jury as follows: "Proof of such facts and circumstances as tend to support the testimony of the accomplice and which

satisfy the jury that he is worthy of credit as to those facts, essential to constitute the offense of murder and which tend to connect the defendant or defendants with the commission of the offense charged, satisfies the law," etc.

In condemning the charge in Walker's Case, Judge Lattimore said: "The danger and mistake of such a charge is thus made to appear by the transposition of a comma for it needs no argument to demonstrate that the jury may not convict on the testimony of an accomplice whose evidence is corroborated no further than is necessary to satisfy the jury that the accomplice is worthy of credit as to those facts which are essential to constitute the offense of murder, and which tend to connect the defendant with such crime. If the purpose of the lawmakers had been to only require that the jury be satisfied that the accomplice was worthy of credit, they would have said so, but they did not. The charge under consideration is so worded, as, in effect, to say that the test of corroboration is: Does it satisfy the minds of the jury that the accomplice is worthy of credit? This is not the test laid down in the law. Murphy v. State, 65 Texas Crim. Rep., 55, 143 S. W., 616, and Cole v. State, 70 Texas Crim. Rep., 459, 156 S. W., 929, present similar charges; the Oates Case, 67 Texas Crim. Rep., 488, 149 S. W., 1194, does not. There are other things in the Forson, Murphy, and Cole cases, supra, which may be permitted to stand, but in so far as said opinions conflict with this one they will be overruled."

In Proyor v. State, 115 Texas Crim. Rep., 134, 29 S. W. (2d) 776, a charge in substantially the same language as the one in the instant case was also condemned by this court, and the case of Walker v. State, supra, cited in support of the holding. J. J. Crow testified to having paid appellants a sum of money in order to regain his release after they had arrested him for transporting intoxicating liquor. The court instructed the jury that Crow was an accomplice witness. The state relied largely upon circumstances to corroborate the accomplice. Giving effect to the decisions of this court, we must hold that the charge under consideration presents reversible error.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.