United States Court of Appeals,

Fifth Circuit.

No. 91–1440.

BURLINGTON NORTHERN RAILROAD CO., a corporation, Plaintiff–Appellant,

v.

BROTHERHOOD OF MAINTENANCE OF WAY EMPLOYEES, an unincorporated
association, et al., Defendants–Appellees.

May 22, 1992.

Appeal from the United States District Court For the Northern District of Texas.

Before WISDOM, JONES, and SMITH, Circuit Judges.

WISDOM, Circuit Judge.

The plaintiff-appellant, Burlington Northern Railroad Company ("BN"), contends that the
district court erred by dismissing its demand for monetary relief. BN challenges the district court's
application of *Louisville & Nashville Railroad Co. v. Brown,*[1] a decision of this Court, to the facts
of this case. BN also questions the continued validity of that precedent. We affirm.


I. BACKGROUND

The defendant-appellee, the Brotherhood of Maintenance of Way Employees ("BMWE" or
"the union"), is the collective bargaining representative of certain employees of BN. BMWE and BN
are parties to a collective bargaining agreement that governs the hours of service, rates of pay, and
working conditions of the covered employees ("the Schedule Agreement"). BMWE and BN are also
parties to a supplemental agreement concerning employment of union members in the process of
laying railroad ties, specifically in connection with the use of the P811–S, a machine that lays concrete
ties ("the P811–S Agreement").


In March 1990, BN notified BMWE that it intended to utilize a newly developed clip and

---

[1]252 F.2d 149 (5th Cir.), *cert. denied,* 356 U.S. 949, 78 S.Ct. 913, 2 L.Ed.2d 843 (1958).

insulator installation machine ("the clipcar") in the process of laying concrete ties. BN stated that the contractor's personnel would be operating this new machine rather than BMWE members. BMWE objected to BN's plans to contract out this work, and requested a conference to discuss the matter.

During the conference held on April 5, 1990, BN argued that it was entitled to contract out this work by virtue of provisions in the Schedule Agreement that allow BN to contract out work under specified conditions. BMWE, on the other hand, stated that this work was covered by the provisions of the P811–S Agreement that require all "clipping" work to be "bulletined"[2] to BMWE members.

In May 1990, BMWE notified BN that if BN proceeded to contract out this work, the union would consider this to be a unilateral change in the P811–S Agreement.[3] BN responded that it had the right to contract out this work and that to do so would not constitute a unilateral change in any of the agreements between the parties.

BN had learned that BMWE planned to strike over this issue and filed an action against BMWE[4] seeking injunctive relief and damages. BN also moved for a temporary restraining order. The district court issued a TRO at 2:30 a.m. on June 26, 1990, enjoining the strike. On June 26,

---

[2]A bulletin is the procedure whereby members of BMWE bid on jobs.

[3]In the terminology used in discussions of the Railway Labor Act, a dispute over changes in rates of pay, rules, or working conditions is a "major dispute". A dispute arising out of grievances or out of the interpretation or application of agreements concerning the rates of pay, rules, or working conditions is a "minor dispute".

> Under the Act, minor disputes are subject to compulsory arbitration and the parties may not resort to self-help. Thus, a district court may enjoin a strike over a minor dispute. Major disputes are the subject of voluntary arbitration, and the parties may resort to self-help only after the procedures described in the Act have been exhausted. A strike by the union over a major dispute may also be enjoined prior to exhaustion of those procedures, unless the carrier has already violated the status quo by making a unilateral change in working conditions.

[4]The complaint also named as defendants several individual officers of BMWE. For convenience, the defendants will be referred to collectively as "BMWE".

1990, at 6:00 a.m., before being served with the TRO, BMWE initiated a twenty-four hour strike against BN in response to BN's contracting out for the clipcar work. Upon notice of the entry of the TRO, BMWE ceased all strike activity. The parties agreed to continue the TRO until after a hearing on BN's motion for a preliminary injunction.

The hearing on the preliminary injunction was held on August 20, 1990. The court, without ruling on BN's demand for monetary relief, granted the preliminary injunction. The court found a substantial likelihood that the dispute was a minor dispute under the Railway Labor Act, and that therefore BMWE could not resort to self-help.[5]

In January 1991, BN moved for summary judgment on its demands for a permanent injunction and for monetary relief. In February 1991, BMWE moved to dismiss BN's demand for monetary relief. On February 14, 1991, the district court granted BN's motion for summary judgment with respect to the permanent injunction, but denied the motion with respect to the demand for monetary relief. On March 7, 1991, the district court granted BMWE's motion to dismiss BN's demand for monetary relief, and entered a final judgment. After the district court granted a motion to reconsider, and amended the permanent injunction, BN timely noticed this appeal from the order granting BMWE's motion to dismiss the demand for monetary relief.

II. DISCUSSION

On appeal, BN contends that the district court erred in dismissing its demand for monetary relief. The district court granted BMWE's motion to dismiss on the authority of this Circuit's decision in *Louisville & Nashville Railroad Co. v. Brown.* BN contends that the district court incorrectly applied *Brown* to the facts of this case. BN argues alternatively that, if *Brown* does control this case, it should be overruled.

---

[5]The parties have not appealed any of the court's rulings with respect to the preliminary injunction.

A. The applicability of *Brown.*

In *Brown,* a railroad brought suit against several of its employees seeking damages caused by the employees' inciting a strike that shut down the railroad for three days. On appeal this Court recognized that 45 U.S.C. § 152 First creates a duty on the part of the employees "to exert every reasonable effort ... to settle all disputes ... in order to avoid any interruption to commerce or to the operation of any carrier". The Court held, however, that § 152 First did not create a cause of action for damages caused by an illegal strike.

In this case, BN seeks damages caused by BMWE's short-lived, illegal strike.[6] BN contends that BMWE is liable for the losses suffered by BN due to BMWE's violation of its duty under § 152 First and § 153 First (i) to submit a minor dispute to binding arbitration. BN argues on appeal that *Brown,* which held that damages were not available for a violation of this duty, can be distinguished from the present suit.

BN first attempts to distinguish *Brown* on its facts. Apparently, BN would have this Court limit the holding of *Brown* to situations in which the employer sues individual employees rather than the union. While the factual situations may differ, the holding in *Brown* was not limited to its particular facts. Furthermore, we see no reason to so limit the holding of *Brown.* Indeed, other courts have recognized *Brown* as holding that there is no cause of action against a union for damages for a breach of the § 152 First duty.[7]

BN also argues that *Brown* did not consider whether damages could be awarded as part of

---

[6]BMWE's strike must be considered illegal in light of the district court's finding that the dispute was minor. BMWE does not challenge this finding.

[7]*See, e.g., Kennedy v. Long Island R.R.,* 319 F.2d 366, 372 n. 7 (2d Cir.), *cert. denied,* 375 U.S. 830, 84 S.Ct. 75, 11 L.Ed.2d 61 (1963); *Maas v. Frontier Airlines, Inc.,* 676 F.Supp. 224, 227 (D.Colo.1987); and *National Airlines, Inc. v. Airline Pilots Ass'n Int'l,* 431 F.Supp. 53, 54 (S.D.Fla.1976). *See also* Dennis A. Arouca, *Damages for Unlawful Strikes Under the Railway Labor Act,* 32 Hastings L.J. 779, 793 (1981) (In *Brown* the Fifth Circuit "refus[ed] to allow damages to carriers for union violation of sections 2 First and 3").

equitable relief. BN argues that this Court's decision in *United Industrial Workers of the Seafarers Int'l Union v. Board of Trustees of Galveston Wharves,*[8] holds that monetary relief may be awarded as part of the equitable relief ordered by the court. In *Galveston Wharves* the Court awarded back pay to employees who were wrongfully discharged when the carrier unilaterally altered the terms of a collective bargaining agreement without following the procedures dictated by 45 U.S.C. § 156.

*Galveston Wharves* is inapposite to this case. The monetary award in *Galveston Wharves* was in response to a violation of § 156; *Brown* addressed a violation of § 152 First. The holding of *Galveston Wharves* that monetary relief is available for a breach of § 156 does not conflict with the holding of *Brown* that no monetary relief is available for a breach of § 152 First.[9] Nor do we find that the holding of *Brown* is limited to a situation in which the plaintiff classifies the damages as a legal remedy as opposed to an equitable remedy. Regardless of the label attached to the damages sought, the nature of the relief sought in this case is identical with that sought in *Brown*—the railroad wants to recover the money it expended as a result of the illegal strike. *Galveston Wharves* provides no support for BN's position.

While the *Brown* holding did not directly address a violation of § 153 First (i), we find that

---

[8]400 F.2d 320 (5th Cir.1968), *cert. denied,* 395 U.S. 905, 89 S.Ct. 1747, 23 L.Ed.2d 219 (1969).

[9]The duties created by the two sections of the Act are not identical. Section 156 concerns the carrier's and the union's duty to maintain the status quo while negotiating changes in collective bargaining agreements. There are no cases stating that damages are not available to the carrier if the union violates this duty.

Because it considers a different section of the Act, *Galveston Wharves* would not control the outcome of this case even if this Court were considering the issue on a clean slate. Note also that the Court in *Galveston Wharves* did not even mention *Brown,* which indicates that the issues in the two cases were not thought to be related.

BN also suggests that *Franklin v. Gwinnett County Public Schools,* —— U.S. ——, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992), undermines *Brown. Franklin* holds that damages are available in a suit under Title IX. Again, even if this Court were considering the issue on a clean slate, *Franklin* would not control.

a violation of this section is within the holding of *Brown*.[10] Section 153 First (i) mandates compulsory arbitration to resolve minor disputes.[11] When an illegal strike occurs over a minor dispute, the employees or the union have violated not only § 152 First but also § 153 First (i). We find that the holding in *Brown* is not limited to the situation in which the carrier fails to plead the violation of the latter section. We are also not aware of any case in which damages have been awarded for violation of § 153 First (i).[12]

This Court previously held in *Brown* that a carrier had no cause of action under the Railway Labor Act for damages caused by an illegal strike. The district court correctly held that the holding in *Brown* controlled the disposition of the present suit.

B. The continued validity of *Brown*.

BN argues alternatively that *Brown* should be overruled. "In this circuit one "panel may not overrule the decision, right or wrong, of a prior panel' in the absence of en banc reconsideration or superseding decision of the Supreme Court."[13] This Court has never considered the issue en banc.[14] BN has not directed the attention of this Court to any Supreme Court decision holding that monetary relief is available for a breach of the § 152 First duty.[15] Thus, this panel is bound to follow the

---

[10]*See,* Arouca, *supra* note 7, at 792–93 (indicating that *Brown* held that damages were not allowed for a violation of § 152 First or for a violation of § 153).

[11]*Brotherhood of R.R. Trainmen v. Chicago River & Ind. R.R.,* 353 U.S. 30, 39, 77 S.Ct. 635, 639, 1 L.Ed.2d 622 (1957).

[12]In *Chicago River* the Supreme Court held that an injunction could issue to enjoin compliance with § 153 First (i); the Court did not address the question of whether damages could be awarded.

[13]*Pruitt v. Levi Strauss & Co.,* 932 F.2d 458, 465 (5th Cir.1991) (quoting *Brown v. United States,* 890 F.2d 1329, 1336 (5th Cir.1989)) (other citations omitted).

[14]Indeed, in the history of the Railway Labor Act, the *Brown* panel is the only federal appellate court to have considered the question.

[15]There are *no* reported cases awarding damages for the breach of the § 152 First duty. In *Denver & R.G.W.R.R. v. Brotherhood of R.R. Trainmen,* 387 U.S. 556, 87 S.Ct. 1746, 18 L.Ed.2d 954 (1967), the Supreme Court was presented with a case in which the district court had

holding in *Brown.*


III. CONCLUSION

The district court correctly dismissed the demand for monetary relief on the authority of *Brown.* The decision of the district court is AFFIRMED.

---

awarded damages. The only issue decided by the Supreme Court, however, was a venue issue; the Court did not address the issue of monetary relief. On remand to the district court, the case was apparently dismissed with prejudice and the damages were never collected. Thus, *Denver* does not provide any authority for the proposition that monetary relief is available.

> *See also,* Harry Lustgarten, *Principles of Railroad and Airline Labor Law* (1984):
>
> The Railway Labor Act does not specifically authorize a carrier to recover damages for an unlawful strike and there has been no judicial decision indicating that such a right exists. It appears unlikely, moreover, that the courts in the future would be inclined to allow such damages in view of the potential impact it might have upon the unions' ability to represent the employees.

*Id.* at 157.