**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 92-1742

STEPHEN RAY NETHERY,

Petitioner-Appellant,

versus

JAMES A. COLLINS, Director,
Texas Department of Criminal
Justice, Institutional Division,

Respondent-Appellee.

Appeal from the United States District Court
for the Northern District of Texas

(June 11, 1993)

Before POLITZ, Chief Judge, KING and BARKSDALE, Circuit Judges.

POLITZ, Chief Judge:

Stephen Ray Nethery was convicted of capital murder and sentenced to death by the Texas state court. With all direct appeals and collateral state reviews exhausted he seeks federal habeas relief. The district court denied his application and refused to grant a certificate of probable cause for appeal. We granted CPC. For the reasons assigned, we affirm.

<u>Background</u>

On the evening of February 22, 1981, Nethery met a woman in a Dallas bar. They consumed several strong drinks and he persuaded her to leave the bar with him to go to a secluded spot to smoke marihuana. They drove to an area near a lake in a high crime area and parked. It was well after midnight. Nethery made sexual advances which his companion initially resisted. A pistol fell out of his pocket. He caused her to disrobe. He did likewise and they engaged in sexual relations over an extended period. A police car on patrol spotted them and pulled up alongside. Two officers exited their vehicle; Officer Phillip Brown approached the Nethery auto and shined his flashlight inside. Officer John McCarthy stood by the police auto. As Officer Brown illuminated the interior of Nethery's car the woman was attempting to put on her clothes; Nethery was naked. Officer Brown told them that they could be arrested and instructed them to leave the area.

At this point Brown turned to return to the police cruiser. As he did, Nethery exited his car, rested his arm on the top of his vehicle, said "I'm sorry," and fired three quick shots. He hit Officer McCarthy. Officer Brown returned fire and Nethery ran toward the lake. Brown pursued and chased Nethery into the lake where Nethery finally surrendered. Upon returning to the parked vehicles, Brown found his patrol partner on the ground, calling for help on his mobile radio. Officer McCarthy was rushed to the hospital but subsequently died of the gunshot wound to the back of his head.

Nethery was indicted and tried for capital murder in Dallas

County. Pursuant to Texas procedure,[1] the jury first determined his guilt and then considered three statutorily mandated special issues.[2] In response to these questions, the jury found (1) that Nethery's conduct was deliberate and undertaken with the reasonable expectation of McCarthy's death; (2) that there was a probability that Nethery would commit further criminal acts that would constitute a threat to society; and (3) that Nethery's conduct was unreasonable in response to any provocation by Officer McCarthy. Based on these answers, Nethery was sentenced to death by lethal injection.[3]

Nethery's appeal to the Texas Court of Criminal Appeals was direct and automatic. That court found no reversible error in any of his 55 points of error.[4] The Supreme Court denied his petition for certiorari, rendering his conviction final, in early 1986.[5]

Nethery next turned to the writ of habeas corpus. The same judge who had presided over his trial denied his first state application and resentenced him to death. Nethery maintains that at this point the judge disclosed his close personal relationship with Officer McCarthy. Nethery appealed the denial to the Texas

---

[1]**See** Tex. Code Crim. Proc. art. 37.071.

[2]The jury was also instructed that it could consider evidence of temporary insanity caused by intoxication.

[3]Tex. Code Crim. Proc. art. 37.071.

[4]**Nethery v. State**, 692 S.W.2d 686 (Tex. Crim. App. 1985) (en banc), **cert. denied**, 474 U.S. 1110 (1986).

[5]**Nethery v. Texas**, 474 U.S. 1110, 106 S.Ct. 897 (1986).

3

Court of Criminal Appeals, adding a claim of judicial bias. That court again denied relief.

Nethery thereafter filed his first application for a federal writ, which was dismissed for failure to exhaust a claim. He did nothing until his execution was rescheduled, at which point he returned to the state district court again seeking habeas relief. This time a different judge was assigned to the case. The court found no factual or legal basis for relief. The Texas Court of Criminal Appeals affirmed.

Nethery then filed the instant application for federal habeas. The district court assigned the matter to a magistrate judge who held an evidentiary hearing. The magistrate judge found no credible evidence supporting Nethery's claim of judicial bias and recommended that the application be denied. The district court adopted the recommendation and denied an application for CPC. We granted CPC.

## Analysis

### I. JUDICIAL BIAS

Nethery claims that his trial was tainted by the presiding judge's failure to disclose a close personal friendship with the deceased officer. He contends that the relationship did not become apparent until the judge went into "an emotional tirade" during a resentencing hearing on Nethery's application for state habeas relief. The record of that hearing indicates that the judge sentenced Nethery to die on McCarthy's birthday and then immediately called a short recess. After returning, the judge

4

directed the clerk to send a copy of the death warrant to Nethery so he could "study it" before he died. Nethery claims the judge also professed a close friendship to the victim, although the record is silent in this respect. The state contends that the judge simply was appalled by the senseless killing.

The accused in any criminal trial is guaranteed the right to an impartial tribunal.[6] To secure relief on this basis, Nethery had to establish that the judge was influenced by interests apart from the administration of justice and that this bias or prejudice resulted in rulings based on other than facts developed at trial.[7]

Nethery's conclusion of bias is premised on the judge's alleged friendship with Officer McCarthy. The state habeas court received conflicting affidavits from the trial judge and Nancy Berry, Nethery's friend and spiritual advisor, regarding the judge's statements at the resentencing hearing. Berry claimed to have heard the judge profess a friendship with the victim; the judge denied this and maintained that he was not personally acquainted with the victim. The record of the resentencing hearing is silent with respect to the judge's supposed reference to a friendship with the victim, corroborating the judge's version of events. The state habeas court found as a matter of fact that the judge was not a personal friend of the victim. Because it did not follow on the heels of a full and fair hearing, this finding is not

---

[6]**Bradshaw v. McCotter**, 785 F.2d 1327, 1329 (5th Cir.), **modified**, 796 F.2d 100 (5th Cir. 1986).

[7]**United States v. Reeves**, 782 F.2d 1323, 1325 (5th Cir. 1986).

5

entitled to the statutory presumption of correctness.[8]

Berry testified in the evidentiary hearing conducted *a` quo*, stating, as she had in her affidavit, that she heard the trial judge profess a friendship with the decedent during the resentencing hearing.  The magistrate judge, citing her selective recall of events, chose to discredit her testimony and concluded that the "most petitioner has shown is that the trial judge was offended and upset by the brutal and senseless nature of petitioner's crime."  The magistrate judge found the record of the hearing and the state trial judge's affidavit more credible.  Rule 52(a)'s command of deference to findings of fact, particularly when, as here, those findings are premised on credibility assessments, compels our rejection of this assignment of error.[9]

---

[8]28 U.S.C. § 2254(d)(2).  The state habeas court did not conduct an evidentiary hearing before discounting Berry's version of events; rather, it adopted in whole the state's proposed findings of fact two days after Nethery filed his petition. Findings based solely on a paper record are not necessarily entitled to a presumption of correctness.  **Ellis v. Collins**, 956 F.2d 76 (5th Cir. 1992).  "[I]t is necessary to examine in each case whether a paper hearing is appropriate to the resolution of the factual dispute underlying the petitioner's claim."  **May v. Collins**, 955 F.2d 299, 312 (5th Cir.), **cert. denied**, 112 S. Ct. 1925 (1992).  Notably, and for obvious reasons, unlike the petitioners in **Ellis** and **May**, Nethery's petition was not considered by the same judge who had presided over his trial; thus, there was never a meaningful opportunity for the court to assess the credibility of the conflicting affiants.  Also significant is that Nethery's version of events was not so facially insubstantial as to render a hearing a mere gratuitous formality.  To the contrary, the record of the hearing and an independent news report both documented that the judge became emotional during the hearing and sentenced Nethery to die on what would have been Officer McCarthy's birthday.

[9]**Anderson v. Bessemer City**, 470 U.S. 564 (1985).

II.  **GRAND JURY COMPOSITION**

It is well established that the criminal defendant has no constitutional right to a grand jury indictment before trial in state criminal proceedings.[10] A deficient indictment will, however, provide a basis for federal habeas relief if the defect is so significant that the convicting court lacked jurisdiction under state law.[11]

Under Texas law, a grand jury is composed of twelve grand jurors.[12]  Once the grand jury is impaneled, nine grand jurors constitute a quorum for doing business.[13]  A review of pertinent

---

[10]**Hurtado v. California**, 110 U.S. 516 (1884); **Hamilton v. McCotter**, 772 F.2d 171 (5th Cir. 1985).

[11]**Branch v. Estelle**, 631 F.2d 1229 (5th Cir. 1980).

[12]Tex. Const. art. V, § 13; Tex. Code Crim. Proc. art. 19.40.

[13]"Grand and petit juries in the District Courts shall be composed of twelve men; but nine members of a grand jury shall be a quorum to transact business."  Tex. Const. art. V, § 13.
It became apparent during arguments in the course of the hearing below that Nethery sought to argue that Texas law not only requires the impaneling of twelve grand jurors but that twelve grand jurors must be present to deliberate in every case.  The state court did not address this contention.
The district court, citing **Drake v. State**, 7 S.W. 868 (Tex. App. 1888) and noting the state's waiver of the exhaustion requirement, determined that Texas law imposed no such requirement. Based on our review of the plain language of the Texas Constitution and its Code of Criminal Procedure, as well as Texas case law, we agree.  **Hodges v. State**, 604 S.W.2d 152 (Tex. Crim. App. 1980) (holding nine grand jurors constitute a quorum for returning indictments); **see also In re Wilson**, 140 U.S. 575 (1891) (no jurisdictional defect where sufficient number of grand jurors voted to indict notwithstanding fact that an insufficient number were impaneled); 38 Am. Jur. 2d **Grand Jury** § 16 (1968) ("Unless the statute is mandatory as to the number of grand jurors acting, the excusing or absence of some of the panel will not affect an indictment if enough remain to constitute the number necessary to concur.").

statements in Texas decisions, mostly in dicta and mostly from the late 1800s and early part of this century, suggests that a conviction after indictment by a grand jury impaneled with more or less than 12 members is void.[14] Assuming, *per arguendo*, that these cases reflect the current state of Texas law, and that proof of the impanelment of less than 12 grand jurors would constitute grounds for reversal on collateral attack, Nethery has failed to establish that controlling fact herein.

Nethery claims to have learned from a fellow inmate, who was indicted by the same grand jury, that the grand jury was not lawfully formed. During the course of the evidentiary hearing in this case, Nethery introduced the transcript of a hearing in his fellow inmate's case in which the foreman of the grand jury noted in passing that only nine grand jurors deliberated throughout the grand jury's tour of duty. The state objected to the introduction of this transcript because the issue in the previous case was whether the indictment had been forged; thus, there never had been an opportunity to develop fully the testimony from the foreman with respect to the number of grand jurors. The foreman did not testify in the evidentiary hearing before the magistrate judge.

Assuming, *per arguendo*, that the foreman's testimony in an unrelated proceeding was properly admitted under a hearsay exception, and that this testimony can fairly be read to establish the presence of only nine grand jurors during deliberation of both

---

[14]**E.g., Wilson v. State**, 36 S.W.2d 733 (Tex. Crim. App. 1931) (dicta).

8

cases, the same result obtains. Texas law clearly provides for indictment by a quorum of nine grand jurors; the foreman's testimony, even if accepted as reliable, would, in fairness, establish only that this number was present when the Nethery indictment was handed up. Hugh Lucas, an Assistant District Attorney, testified that he supervised the operations of the grand jury on the day Nethery was indicted, that twelve grand jurors were impaneled, and that he personally witnessed at least nine of them assemble to hear Nethery's case. This testimony never has been contradicted and is corroborated by court documents listing the names of the 12 impaneled grand jurors. This assignment of error is without merit.

III. **PROSECUTORIAL MISCONDUCT**

Nethery charges that certain statements made by the prosecution during closing arguments improperly pointed to his failure to testify. The Texas Court of Criminal Appeals found the following statement by Nethery's lawyer to have invited reply:

> The prosecutor, when they were questioning you, told you it's not up to the state to prove motive. That's right. Nothing in the court's charge says they have to prove it. But I'll say this: If you have lack of motive, you're certainly entitled to consider that. According to Brown, he'd finished. He was--both of them [had] finished. Turning to go back to their car. And you've got a man who knows that he's facing two police officers with guns and [he] gets out of the car and deliberately shoots and kills a policeman. Where's the logic? What reason is there?

In its closing the state responded:

> Motive? Mr. Goodwin wants a motive. Mr. Goodwin wants a reason. You told us, each and every one of you told us on voir dire that we could not, in many cases, bring you a motive or a reason and you agreed from that witness

9

stand that you would not force the State to show you a
motive. And I'm sure it was explained to you that we
can't show you a motive or a reason because many times it
is known only to the defendant. It's in that head
(pointing to defendant). We can't cut that head open.

The trial court sustained a defense objection to the statement and
instructed the jury to disregard it but refused to declare a
mistrial. The state argues that (1) even if the statement could be
interpreted as a comment on Nethery's silence, it was invited; (2)
to the extent the reply exceeded the invitation, if at all, the
error was either cured by the instruction; or (3) was harmless.

While we hesitate to endorse the prosecution's remarks as an
appropriate and measured response to those of defense counsel, we
note that any unfair prejudice was, at most, slight.

Defense counsel had opined that the state's failure to prove
a motive for Nethery's conduct suggested a lack of criminal
responsibility. The state was entitled to make an appropriate
response. To the extent the prosecution may have responded
excessively, we must view the error in light of the court's
curative instruction and consider whether the residual impact had
any "substantial and injurious effect or influence in determining
the jury's verdict."[15]

---

[15]In **Chapman v. California**, 386 U.S. 18 (1967), the Court
considered whether the prosecution's reference to the defendants'
failure to testify at trial, in violation of the fifth amendment
privilege against self-incrimination, required reversal of their
convictions. The Court rejected a proposed blanket rule which
would have required reversal in all cases of constitutional error,
preferring instead a rule requiring reversal whenever the error is
not harmless beyond a reasonable doubt.
    Since **Chapman**, the Court has drawn a distinction between
constitutional violations "of the trial type" and "structural
defects in the constitution of the trial mechanism, which defy

To say at this point that the jury drew the adverse inference Nethery feared would be speculative at best. Nonetheless, even assuming the statement caused each juror to consider Nethery's failure to take the stand in his own defense and to draw an adverse inference from it, we are not prepared to say that this assumed error was harmful to the extent required under the controlling standard. Nor are we prepared to say that this assumed error was not corrected by the court's curative instruction.[16] Rather, we hold that any error associated with the prosecution's reply was cured at trial and, in light of the overwhelming evidence of guilt, had no substantial and injurious effect or influence in the determination of Nethery's guilt or proper sentence.

IV. **JURY SELECTION**

During the course of jury selection the court excused for cause prospective jurors William Keller and Debra Pippi and declined defense invitations to excuse several other venire members who indicated a preference for imposing death as a penalty for murder. Nethery complains of both decisions.

In **Wainwright v. Witt**[17] the Supreme Court approved the removal of a prospective juror for cause where his views would "prevent or

---

analysis by harmless error standards." **Arizona v. Fulminante**, 499 U.S. ---, 111 S. Ct. 1246 (1991). The Court recently has held that "trial type error" will serve as a basis for habeas relief only if it "had substantial and injurious effect or influence in determining the jury's verdict." **Brecht v. Abrahamson**, 113 S. Ct. 353 (1993). **Chapman** error, as alleged here, is trial error.

[16]**Donnelly v. De Christoforo**, 416 U.S. 637 (1974).

[17]469 U.S. 412 (1985).

11

substantially impair" the performance of his duties in accordance with his oath and the court's instructions. The Court recognized that reliable assessment of the juror's ability to set aside personal convictions depends on the juror's demeanor and credibility. A juror's bias need not be proven with unmistakable clarity. Accordingly, judgments made at trial about a juror's ability to abide by the oath and the court's instructions, notwithstanding moral convictions, are accorded a presumption of correctness under 28 U.S.C. § 2254(d).[18]

Venire member Keller repeatedly insisted that the death penalty was **per se** inappropriate and pointedly answered that he would vote "no" to the special issues regardless of the instructions or the evidence, in order to avoid its imposition. Only on cross-examination did he testify that it was "possible" that he could answer the special issues in the affirmative. On redirect by the state, Keller reiterated that he would vote "no" to prevent the imposition of the death penalty and held to that position during the judge's final examination. Venire member Pippi likewise expressed her disapproval of the death penalty and testified that she would find it difficult to cast aside her convictions in favor of the court's instructions. We conclude and hold that the dismissal of Keller and Pippi did not violate the standard announced in **Witt**.

Nethery exercised peremptory challenges to remove the venire

---

[18]**Duff-Smith v. Collins**, 973 F.2d 1175 (5th Cir. 1992) (citing **Witt**), **cert. denied**, 113 S. Ct. 1958 (1993).

12

members he identifies as having been properly subject to strikes for cause.  Even counting the strikes he used on these jurors, Nethery did not exhaust his peremptory challenges.[19]  He was not forced, therefore, to accept jurors he found objectionable, and the court's refusal, erroneous or otherwise, to strike for cause those prospective jurors he removed with peremptory challenges did not cause harm of which Nethery may now complain.[20]

## V.  MITIGATING EVIDENCE AND SPECIAL ISSUES

In three distinct points of error, Nethery asserts that the jury could not give effect to mitigating evidence of his intoxication in responding to the statutorily mandated special issues.  He first claims that the special issues as they existed at the time of his trial[21] did not allow the jury to consider evidence

---

[19]In **Demouchette v. State**, 731 S.W.2d 75, 83 (Tex. Crim. App. 1986), the court stated:
> When the trial court errs in overruling a challenge for cause against a venireman, the defendant is harmed only if he uses a peremptory strike to remove the venireman and therefore suffers a detriment from the loss of a strike.  Error is preserved only if the defendant exhausts his peremptory challenges, is denied a request for an additional peremptory challenge, identifies a member of the jury as objectionable and claims that he would have struck the juror with a peremptory challenge.

[20]**Ross v. Oklahoma**, 487 U.S. 81 (1988) (finding no due process or sixth amendment violation where capital murder defendant exhausted his peremptory challenges removing a juror who should have been excused for cause in the absence of a showing that any juror who ultimately was seated was subject to removal for cause).

[21]Texas has since revised the submission to require an instruction informing the jury expressly to consider any mitigating evidence in answering the three special issues.  Tex. Code Crim. Proc. art. 37.071(d)(1) (Vernon Supp. 1993).
At the time of trial the issues were:

(1)  whether the conduct of the defendant that caused

13

of his intoxication or to incorporate their response into the answers called for and, as a result, the court's refusal to provide a separate instruction resulted in a violation of his eighth and fourteenth amendment rights. He next claims that the special issues failed to apprise the jury about how it should consider evidence which was probative of his future dangerousness and which also mitigated his culpability. Lastly, he argues that the special issues and instructions allowed the jury to consider only evidence of future dangerousness. We address these arguments collectively.

In **Penry v. Lynaugh,**[22] the Supreme Court held that the Texas special issues were inadequate to allow meaningful consideration of the mitigating effect of Penry's mental retardation. The Court based its conclusion on the direct inverse relation between the evidence's mitigating and aggravating potential and the fact that the special issues provided a means of expression only to the aggravating character of this evidence in relation to the second special issue--future dangerousness. Thus, the jury's ability to consider the mitigating effect in response to one of the three questions was not present and an additional instruction was

> the death of the deceased was committed deliberately and with the reasonable expectation that the death of the deceased or another would occur;
> (2) whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society; and
> (3) if raised by the evidence, whether the conduct of the defendant in killing the deceased was unreasonable in response to the provocation, if any, by the deceased.

[22]492 U.S. 302 (1989).

14

necessary.

Nethery argues that the mitigating effect of his intoxication likewise had relevance beyond the scope of any question asked in Texas' sentencing scheme and that the absence of further instruction prevented the jury from considering this evidence or from expressing a favorable response. He also assails the Texas scheme in its entirety because it allegedly fails to provide the jury with reasonable means of considering mitigating evidence and directs attention unfairly towards aggravating factors.

The **Penry** court expressly declined a sweeping invalidation of the Texas scheme; such would have required announcing and applying a "new rule."[23] The Court thus did not invalidate the Texas scheme in toto or mandate "special instructions whenever [the accused] can offer mitigating evidence that has **some** arguable relevance beyond the special issues."[24] Rather, this court has construed the holding in **Penry** to require additional jury instructions only where the "major mitigating thrust of the evidence is beyond the scope of all the special issues."[25] We have held that the Texas special issues are sufficiently broad in themselves to allow the jury to give meaningful consideration to the accused's voluntary intoxication.[26]

---

[23]**Id.**

[24]**Graham v. Collins**, _____ U.S. _____, _____, 113 S. Ct. 892, 902 (1993).

[25]**Graham v. Collins**, 950 F.2d 1009, 1027 (5th Cir. 1992) (**en banc**), **aff'd**, 113 S. Ct. 892 (1993).

[26]**Cordova v. Collins**, 953 F.2d 167 (5th Cir.), **cert. denied**, 112 S. Ct. 959 (1992); **James v. Collins**, 987 F.2d 1116 (5th Cir. 1992).

15

Unlike the permanent disability suffered by Penry, Nethery's intoxication was a transitory condition which could be given mitigating effect in response to the first or second special issues. Indeed, Nethery's trial counsel recognized as much and so argued to the jury. Nethery's arguments are either foreclosed by controlling precedent or propose a new rule which we may not apply on collateral review.[27]

VI.  **FAILURE TO DEFINE TERMS USED IN THE SPECIAL ISSUES**

Nethery claims that the meaning of the terms "deliberately,"

---

Unlike the dissent, we do not believe we have before us the question whether the jury instruction as given, pursuant to section 8.04 of the Texas Code of Criminal Procedure, affirmatively precluded the jury's consideration of Nethery's purported intoxication. There was no prior submission to that effect in either the state or federal courts. In fact, as the dissent notes, the Texas courts found the objection Nethery actually presented to be procedurally barred and also found that he was not so intoxicated at the time of the offense as to warrant submission of the temporary insanity instruction. Further, not only did Nethery fail to preserve this point, he actually requested a definition of insanity -- basing his later challenges on the denial thereof -- which would have created the precise prejudice the dissent fears.

The dissent argues that the Texas courts have twice excused procedural defaults where the defendant sought to argue a **Penry** claim because "**Penry** 'constituted a substantial change in the law. . . .'" **Selvage v. Collins**, 816 S.W.2d 390, 392 (Tex.Crim.App. 1991) (<u>citing</u> **Black v. State**, 816 S.W.2d 350, 374 (Tex.Crim.App. 1991)). It is unclear how this reading will be affected by the Supreme Court's subsequent and more restrictive reading of **Penry** in **Graham**. More importantly, as the dissent points out, the defaulted claim would be the total preclusion of a jury's ability to consider mitigating evidence. That objection was recognized, again, as the dissent points out, as early as 1976. <u>See</u> **Jurek v. Texas**, 428 U.S. 262 (1976). We conclude that the claim has not been presented to us at all and, in any event, that Texas courts would find it to be barred. Accordingly, we do not address its merits.

[27]**Graham**, _____ U.S. at _____, 113 S. Ct. at 903.

16

"probability," and "society" cannot be ascertained and thus complains of their use in the special issues. We have determined that these words have a common meaning and adequately permit the jury to effectuate its collective judgment.[28] Thus, consideration of this point is foreclosed.[29]

## VII. FAILURE TO INFORM THE JURY OF THE EFFECT OF NOT ANSWERING THE SPECIAL ISSUES

The jury was informed, pursuant to Article 37.071 of the Texas Code of Criminal Procedure, that it could return a negative answer to any special issue if ten or more of them so voted. An affirmative response to any question required unanimity. The jury was not told of the consequence of its failure to muster fewer than ten "no" votes or 12 "yes" votes. Nethery contends that the failure to so advise the jury caused the jury's responses to fall short of the heightened need for reliability required of a verdict in a capital case.

Nethery muses that the jury's ignorance could lead to a situation in which individual jurors felt compelled to reach a consensus and, thus, one lone juror, assuming that he would have to rally another nine "no" votes, would vote "yes" even though he felt the appropriate answer was "no." This lone juror theory presumes that the juror would disregard the court's instructions to exercise independent judgment and vote according to the evidence as

---

[28]**James**, 987 F.2d at 1120 (citing **Milton v. Procunier**, 744 F.2d 1091 (5th Cir. 1984), **cert. denied**, 471 U.S. 1030 (1985)).

[29]**See United States v. Eckford**, 910 F.2d 216, 220 (5th Cir. 1990) ("[P]rior panel opinions of this Court may not be disturbed except on reconsideration en banc.").

17

presented and the law as explained by the court. Nethery contends that the jury's ignorance about the effect of its verdict could lead to a situation in which jurors feel compelled to reach a consensus because Texas juries are instructed, pursuant to Article 37.071, that they "shall" reach a verdict. We have previously held that this type of claim -- which is based on the principle announced by the Court in **Mills v. Maryland**[30] -- proposes a new rule under **Teague v. Lane**.[31] Nethery's conviction became final in 1986 -- two years before **Mills** was decided. We thus do not reach the merits of his claim. Granting relief on this claim, in contravention of the ordinary presumption that jurors follow the trial court's instructions,[32] would require our fashioning a new rule of criminal procedure.[33] This we decline to do.

The judgment of the district court is AFFIRMED.

KING, Circuit Judge, dissenting:

I respectfully dissent from the panel majority's affirmance of the district court's denial of the writ of habeas corpus in Nethery's case. My disagreement with the majority is limited to

---

[30]    486 U.S. 367 (1988).

[31]    489 U.S. 288 (1989); **Cordova v. Collins**, 953 F.2d 167 (5th Cir. 1992).

[32]**See, e.g., Zafiro v. United States**, 113 S. Ct. 933 (1993).

[33]See **Teague v. Lane**, 489 U.S. 288 (1989).

18

its disposition of Nethery's Eighth Amendment claim regarding his mitigating evidence of voluntary intoxication at the time of the crime.

## I.

I initially note that I believe that the Supreme Court's decision in Graham v. Collins, 113 S.Ct. 892 (1993), aff'g on other grounds, 950 F.2d 1009, 1027 (5th Cir. 1992) (en banc), would appear to require that the majority should, as a threshold matter, address whether Nethery's Penry claim[34] is barred under the nonretroactivity doctrine first announced in Teague v. Lane, 489 U.S. 288 (1989) (plurality opinion). See Graham, 113 S. Ct. at 897 ("Because this case is before us on Graham's petition for a writ of federal habeas corpus, `we must determine, as a threshold matter, whether granting [the habeas petitioner] the relief he seeks would create a "new rule"' of constitutional law.") (citation omitted).[35] The majority, however, cites a prior panel decision of this circuit -- that was rendered after the Supreme Court's decision in Graham -- which reached the merits of a Penry claim based on mitigating evidence of intoxication without mentioning Teague. In effect, that panel held that the Teague doctrine does not bar the court from reaching the merits in such a case. See James v. Collins, 987

---

[34] Penry v. Lynaugh, 492 U.S. 302 (1989).

[35] Even if Graham does not require us to raise the issue sua sponte, see Williams v. Collins, 1993 U.S. App. LEXIS 10195, 989 F.2d 841, ___ n.9 (5th Cir. May 4, 1993), I observe that the State in this case expressly invoked Teague with respect to Nethery's Penry claim, which would appear to require the majority to address the Teague issue. Cf. Collins v. Youngblood, 497 U.S. 37 (1990).

F.2d 1116, 1121 (5th Cir. 1993).[36]  Although I believe that the panel decision in <u>James</u> mistakenly ignored the Supreme Court's decision in <u>Graham</u> regarding the effect of <u>Teague</u> on <u>Penry</u>-type claims, I agree with the majority that we appear to be bound by <u>James</u>.  See <u>Burlington N. R. Co. v. Brotherhood of Maintenance Way Employees</u>, 961 F.2d 86, 89 (5th Cir. 1992) (prior panel decision binds subsequent panel unless intervening en banc or Supreme Court decision).

## II.

Nevertheless, even if this court were to apply <u>Teague</u> to Nethery's case on a clean slate, I believe that Nethery's Eighth Amendment rights were violated under Supreme Court authority firmly in existence well before his conviction became final in 1986.  See <u>Nethery v. State</u>, 692 S.W.2d 686 (Tex.Crim.App. 1985), <u>cert. denied</u>, 474 U.S. 1110 (1986).  As I will explain below, I believe cases such as <u>Jurek v. Texas</u>, 428 U.S. 262 (1976) (joint opinion of Stewart, Powell & Stevens, JJ.), <u>Lockett v. Ohio</u>, 438 U.S. 586 (1978) (plurality), and <u>Eddings v. Oklahoma</u>, 455 U.S. 104 (1982), dictate the result in this case.

**A. The instructions given to Nethery's sentencing jury**

---

[36] In rejecting the habeas petitioner's <u>Penry</u>-type claim based on mitigating evidence of intoxication, <u>James</u> relied on authority from this circuit that antedated the Supreme Court's decision in <u>Graham</u>.  See <u>James</u>, 987 F.2d at 1121 (citing <u>Cordova v. Collins</u>, 953 F.2d 167, 170 (5th Cir. 1992)).  I believe <u>Cordova</u>'s implicit holding that <u>Teague</u> is not a threshold issue to a <u>Penry</u>-type challenge is no longer good law in view of the Supreme Court's decision in <u>Graham</u>.

In contending that his Eighth Amendment rights were violated, Nethery argues that the evidence of his intoxication at the time of the crime could not be given adequate mitigating effect under the three Texas "special issues" submitted to his capital sentencing jury.[37] The majority holds that a jury could adequately give mitigating effect to evidence of intoxication if the jury was submitted these three special issues. I do not quarrel with the abstract holding that, in answering the "deliberateness" query, a rational jury could adequately give mitigating effect to evidence of intoxication at the time of the crime.

My dissent is not based on the operation of the statutory special issues in isolation in Nethery's case; instead, it is based on another instruction that the trial court submitted along with the special issues that, in effect, took all three of the special issues out of operation with respect to Nethery's mitigating

---

[37] At the time of his trial, Article 37.071 of the Texas Code of Criminal Procedure provided that the following three special issues must be submitted to the jury at sentencing:

(1) Whether the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reasonable expectation that the death of the deceased or another would result;

(2) Whether there is a reasonable probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society;

(3) If raised by the evidence, whether the conduct of the defendant in killing was unreasonable in response to the provocation, if any, by the deceased.

Tex. Code Crim. Pro. Art. 37.071(b) (Vernon's 1981). Nethery's jury was given three special issues based in substance on these three statutory special issues.

21

evidence of intoxication.  Pursuant to a Texas statute[38] applicable to all criminal cases -- capital and non-capital -- the trial judge instructed Nethery's jury that:

> *Evidence of temporary insanity caused by intoxication may be introduced by the actor in mitigation of penalty attached to the offense for which he is being tried.* "Intoxication" means disturbance of mental and physical capacity resulting from the introduction of any substance into the body.

Nethery v. State, 692 S.W.2d 686, 711 (Tex.Crim.App. 1985) (quoting from Nethery's jury instruction) (emphasis added).

A reasonable juror[39] could read that instruction as providing that Nethery's evidence of intoxication *could not be considered at all -- including under the special issues* -- unless Nethery was so intoxicated that he was rendered temporarily insane.  Indeed, this

---

[38] See TEX. PEN. CODE § 8.04.  That provision provides in pertinent part:

### § 8.04.  Intoxication.

(a) Voluntary intoxication does not constitute a defense to the commission of a crime.

(b) Evidence of temporary insanity caused by intoxication may be introduced by the actor in mitigation of the penalty attached to the offense for which he is being tried. . . .

Because of § 8.04, Texas criminal juries may not consider evidence of a defendant's voluntary intoxication for any reason during the guilt/innocence phase; a jury may only consider such evidence during the sentencing phase, and then only if the defendant's intoxication rose to the level of temporary insanity. See Tucker v. State, 771 S.W.2d 523, 534 (Tex.Crim.App. 1988).

[39] The Supreme Court has held that, in analyzing capital sentencing issues in the context of jury instructions, courts must ask how a reasonable juror could have interpreted the submitted instructions.  See California v. Brown, 479 U.S. 538, 541 (1987) ("`The question is . . . what a reasonable juror could have understood the charge as meaning.'") (citation omitted).

22

is precisely how the Texas Court of Criminal Appeals interprets §
8.04.  See Tucker v. State, 771 S.W.2d 523, 534 (Tex.Crim.App.
1988) ("[T]he [§ 8.04] instruction required the jury to find that
[the defendant's] intoxication at the time of the killings rendered
her temporarily insane before they could consider her drug use in
mitigation of punishment.  *The charge on its face instructed the
jury to consider the mitigating evidence only in this light,
thereby implying that it may not be considered for any other
purpose*.") (emphasis added); see also Volanty v. Lynaugh, 874 F.2d
243, 244 (5th Cir. 1989).  Of course, while intoxication that is so
severe that it rises to the level of temporary insanity is
quintessential mitigating evidence, so is intoxication that is not
so severe as to be tantamount to a state of insanity.[40]  See Bell
v. Ohio, 438 U.S. 637, 640 (1978) (companion case to Lockett v.
Ohio, 438 U.S. 586 (1978)); see also Elliot v. State, 1993
Tex.Crim.App. LEXIS 84 at *39-40 (Tex.Crim.App.,  April 14, 1993)

---

[40] Nethery's evidence of alcohol and drug use was substantial
enough to permit a reasonable juror to find that he was
intoxicated. While the Texas Court of Criminal Appeals on direct
appeal specifically found that Nethery's evidence of intoxication
did not rise to the level of insanity, see Nethery v. State, 692
S.W.2d 686, 711-12 (Tex.Crim.App. 1985), the court did not find
that Nethery was not intoxicated. Id. at 712. A witness testified
at trial that Nethery drank a substantial amount of hard liquor and
smoked marijuana around the time of the crime.  Nethery himself
stated that "he remembered drinking beer, whisky, and vodka, and he
remembered smoking some marijuana." Id. at 711.  Nethery's bizarre
conduct -- stepping outside of his car totally nude and shooting
the police officer for no reason, see id. at 697 -- also supports
a finding of intoxication.  Nethery met the evidentiary threshold
for Eighth Amendment purposes. See Sawyers v. Collins, 1993 U.S.
App. LEXIS 5596, 986 F.2d 1493 (5th Cir.  March 23, 1993) (merits
of Penry-type claim not reached because defendant's evidence of
intoxication  insubstantial).   The  question  of  Nethery's
intoxication was one within the province of the jury.

(Clinton, J., dissenting); <u>Ex Parte Rogers</u>, 819 S.W.2d 533, 537 (Tex.Crim.App. 1991) (Clinton, J., dissenting, joined by Baird & Maloney, JJ.).[41]

Even as early as <u>Jurek</u>, in 1976, *total* preclusion of a capital sentencing jury's ability to consider *any species of* constitutionally relevant mitigating evidence was held to be an Eighth Amendment violation. See <u>Jurek v. Texas</u>, 428 U.S. at 272 ("[T]he constitutionality of the Texas procedures turns on whether the [special issues] allow consideration of particularized mitigating factors."); <u>see</u> <u>also</u> <u>Lockett v. Ohio</u>, 438 U.S. at 604; <u>Eddings v. Oklahoma</u>, 455 U.S. at 110. Because Nethery's jury was entirely precluded from considering the evidence of his non-insane state of intoxication, I believe that the § 8.04 instruction given by the trial judge in Nethery's case was a straight-forward violation of this well-established Eighth Amendment principle.

_____

[41] In <u>Tucker v. State</u>, <u>supra</u>, the Court of Criminal Appeals observed -- without deciding the constitutionality of a § 8.04 instruction submitted in conjunction with the special issues -- that such a jury charge entirely precluded jury consideration of a non-insane state of intoxication as mitigating evidence. <u>See</u> <u>Tucker</u>, 771 S.W.2d at 534. In a Texas case following <u>Tucker</u>, in which a <u>Penry</u>-type challenge was made to capital sentencing instructions that included both the § 8.04 charge and the three statutory special issues, the Court of Criminal Appeals summarily rejected the defendant's claim without any discussion or citation of <u>Tucker</u>. <u>See</u> <u>Ex Parte Rogers</u>, 819 S.W.2d 533, 534 (Tex.Crim.App. 1991). However, three dissenting judges argued that "this instruction does not even purport to empower the jury to give mitigating effect to evidence of voluntary intoxication that does not rise to the level of temporary insanity. A juror who believed a capital [defendant] was not so intoxicated as to be incapable of appreciating the wrongfulness of his action [i.e., being temporarily insane] might nevertheless find him less morally culpable than would have been a sober man committing the same crime." <u>Id.</u> at 537 (Clinton, J., dissenting, joined by Baird & Maloney, JJ.).

24

**B. Is this claim properly before this court?**

Nethery has not specifically argued that the § 8.04 instruction was the source of the Eighth Amendment violation that he claims occurred at his trial. Rather, he has simply argued that mitigating evidence of his intoxication at the time of the crime could not be given proper mitigating effect under the statutory special issues submitted to his jury. The majority believes that the issue of the constitutionality of the operation of § 8.04 in Nethery's case is not properly before this court. I respectfully disagree.

I believe that we must necessarily address this specific question as a collateral issue to the larger Eighth Amendment claim raised. See Ex Parte Rogers, 819 S.W.2d at 537 (Clinton, J., dissenting, joined by Baird & Maloney, JJ.). As the Supreme Court held in Graham, cases such as Lockett and Eddings require that a capital defendant's sentence be upheld so long as all relevant mitigating evidence was placed within "the effective reach of the sentencer." Graham, 113 S. Ct. at 902. In order for the majority to hold that Nethery's evidence of intoxication was properly considered as mitigating evidence under the instructions given to his capital sentencing jury, it thus must agree that Nethery's evidence of intoxication was not beyond the effective reach of his jury under the special issues. In view of the § 8.04 instruction given by Nethery's trial judge in addition to the statutory special

25

issues, I cannot agree with that conclusion.[42]

Furthermore, I believe that we may not avoid addressing the effect of the § 8.04 instruction because, in considering a challenge to jury instructions, a court must review the entire charge in order to determine the effect of the alleged defect. See California v. Brown, 479 U.S. at 543 (in a capital case, the Court stated that "reading the charge as a whole, *as we must* . . ."); see also United States v. Shaw, 894 F.2d 689, 693 (5th Cir. 1990); United States v. Washington, 819 F.2d 221, 226 (9th Cir. 1987) (asking "whether as a whole [the jury instructions] were misleading or inadequate"). Reviewing the entire sentencing charge in Nethery's case in order to determine whether Nethery's evidence of intoxication was in "the effective reach" of his jury, Graham, 113 S. Ct. at 902, I do not believe that we simply may ignore the § 8.04 component of the capital sentencing charge, notwithstanding Nethery's failure precisely to raise that particular issue. For these reasons, I respectfully dissent.

---

[42] Although this precise claim was not made by Nethery during habeas review in state court, Nethery did argue that the trial court's instructions were unconstitutional because "the jury was not instructed to consider the mitigating evidence [of Nethery's intoxication] in answering the special issues." State Habeas Op. at p. 6. The state habeas courts held that such a claim was procedurally defaulted because no such instruction was sought by Nethery at trial. Since the time of Nethery's denial of state habeas relief, however, a unanimous Texas Court of Criminal Appeals has explicitly waived procedural defaults in Eighth Amendment challenges to the Texas capital sentencing procedures in effect at the time of Nethery's trial. See Black v. State, 816 S.W.2d 350 (Tex.Crim.App. 1991); Selvage v. Collins, 816 S.W.2d 390 (Tex.Crim.App. 1991).

26