**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Melvin C. SCOTT and Charles F. Everett, Jr., Defendant-Appellants.**

**No. 85–4776.**

United States Court of Appeals, Fifth Circuit.

Aug. 7, 1986.

---

Campbell, Campbell & Johnson, James M. Johnson, Minden, La., for Everett.

Jack H. Kaplan, Shreveport, La., for Melvin Scott.

Joseph S. Cage, Jr., U.S. Atty., Dosite H. Perkins, Jr., Asst. U.S. Atty., Shreveport, La., for U.S.

Before GEE, HIGGINBOTHAM, Circuit Judges, and HARVEY *, District Judge.

JAMES HARVEY, District Judge:

Charles Everett and Melvin Scott appeal their convictions for arson and for conspiring to manufacture and possess destructive devices in order to destroy two buildings owned by Everett for the purpose of fraudulently obtaining insurance payments.

Appellant Charles Everett owned two adjacent buildings in Shreveport, Louisiana; one housed the Charles Everett Beauty Shop, the other the El Toro restaurant. On April 4, 1983, Mr. Everett insured the build-

---

* District Judge for the Eastern District of Michigan, Sitting by Designation.

ings and their contents for $125,000.00 under two policies with the Bituminous Casualty Insurance Company. At the time Mr. Everett purchased the insurance, both businesses were in financial difficulty and, as events might have it, a fire broke out in the early morning hours of April 5, 1983. The fire completely destroyed the beauty shop but left the restaurant undamaged.

After extinguishing the fire in the beauty shop, Shreveport Fire Department officials inspected both buildings. In doing so, they found several unexploded incendiary devices in the restaurant. Five of these devices were crudely constructed of five-gallon plastic containers commonly used to carry gasoline, valve stems from automobile tires, plastic tubing, candles, and a small piece of 2″ × 4″ lumber. The incendiary devices were constructed in the following manner. A hole was first cut in one side of the five-gallon containers and an automobile tire stem, with its internal mechanism removed, affixed over that opening. A piece of plastic tubing approximately four feet in length was then attached to the valve stem and the other end of the tubing sealed with a screw.

In use, the five-gallon containers were filled with gasoline and placed approximately three feet above the floor. The gasoline filled not only the five-gallon container but also the length of plastic tubing which was positioned so that its free end was resting on the floor. With a candle attached to a small piece of 2″ × 4″ lumber, lighted and placed on the floor under the suspended portion of plastic tubing, the incendiary devices were detonated when the heat from the lighted candle melted through the tubing and ignited the gasoline.

In addition to the incendiary devices just described, Shreveport Fire Department officials found four one-gallon milk containers filled with gasoline placed at various locations throughout the restaurant. Investigating officials also found the burnt remains of an incendiary device in the adjacent beauty shop, despite the fact that the building was heavily damaged by the fire.

Apart from the incendiary devices, Shreveport officials discovered that the burglar alarm system in the restaurant was turned off on the night of the fire, that the fire extinguishing system had been manually activated prior to the fire, and that the drain in the kitchen area had been stopped up with rags.

As part of their investigation of the fire, Shreveport officials interviewed defendant Everett late in the afternoon of April 6, 1983. Defendant Everett denied having any knowledge of the fire and stated that he had been at the restaurant with some friends the previous evening until shortly after 6:00 p.m. at which time everyone left to watch a basketball game in a rented motel room. Everett further stated that after watching the game, he and his friends went to the motel lounge for drinks and from the lounge they left to pick up some food. However, because their vehicle crashed, they returned to the motel room where they spent the night.

On April 26, 1983, the Shreveport Police Department was contacted through the Crime Stoppers Program with the name of an informant, Connie Jacobson Bedsole, who possessed information about the fire at Everett's beauty shop. Ms. Bedsole informed police that many items from the El Toro restaurant and the beauty shop were at the home of Timothy Rohner. Ms. Bedsole stated that she had spent the night of April 4, 1983 at the Rohner house and that when she awoke the next day, she observed a number of items that had not been in the house the previous evening. These items included a color television, a metal box containing quarters, a garbage bag full of cigarettes, cheese, butter, dishes, silverware, and various and sundry beauty supplies.

Based upon this information, Shreveport police obtained a search warrant and searched the Rohner house finding most of the items Ms. Bedsole described. Some items such as the restaurant menus and metal box with coins could not be located.

The case against Everett, Scott and Rohner continued to develop when in Novem-

ber 1984 Robert Lowery was compelled to testify pursuant to a grant of immunity about defendant Everett's prior involvement in arson. Thereafter, a grand jury was empanelled and returned an indictment against Everett, Scott and Rohner charging them with conspiring to manufacture and possess destructive devices in violation of 26 U.S.C. §§ 5861 and 5871, destroying and attempting to destroy buildings used in interstate commerce in violation of 18 U.S.C. § 844(i), using the mails to fraudulently obtain insurance payments in violation of 18 U.S.C. § 1341, all in violation of 18 U.S.C. § 371.

Prior to trial, Rohner plead guilty to Count 1 of the indictment pursuant to a plea bargain. Under this plea bargain, Rohner agreed to plead guilty to Count 1 and to testify at Scott and Everett's trial, in exchange for which the government agreed to drop Counts 2 through 10 against him and recommended probation on Count 1.

At trial, Lowery testified that one week before the fire, Everett told him that he was going to have the restaurant and beauty shop burned because both businesses were experiencing financial difficulties. Lowery also testified that in the week before the fire, he had driven Everett to various insurance agencies so that Everett could obtain insurance on the buildings. Finally, over Everett's strong objection, Lowery testified that Everett had previously arranged to have two buildings, the Stall Lounge and a duplex home, burned for him. Lowery's testimony, together with the testimony of Shreveport Fire Department officials, established that Everett had arranged to have these buildings burned for Lowery using an incendiary device identical to the one used to burn the Charles Everett Beauty Shop and El Toro Restaurant.

Perhaps the key government witness in the case against defendants Everett and Scott was Timothy Rohner. In accordance with the plea bargain, Rohner testified that defendant Scott approached him several days prior to the fire asking him if he wanted to "help with a job." Although defendant Scott told Rohner nothing specific about the job, Rohner agreed. Scott then contacted Rohner on the day of the fire and arranged to pick him up. The two men stopped for drinks and then proceeded to defendant Scott's house where Rohner found that Scott had already collected all of the parts needed to make the incendiary devices. After constructing the devices in the manner earlier discussed, Rohner and Scott transported them to the restaurant and beauty shop. They entered the building, set up the incendiary devices and then pryed open the back door and loaded various items onto Scott's truck so that it would appear that the businesses had been burglarized. Once back at Scott's home, both men realized that they "had made a goof" in failing to allow for adequate ventilation in the restaurant for the incendiary devices. This "goof" in fact caused the incendiary devices in the restaurant to fail and proved to be the beginning of the end.

After eliciting this testimony from Rohner, the government introduced into evidence a statement made by defendant Scott to Rohner that they were burning the buildings for Everett.

Based upon this and other testimony, the jury found defendant Everett guilty of the charges contained in Counts 1, 2, 3 and 4 and defendant Scott guilty of the charges contained in Counts 1, 2, 3, 5, 6, 7 and 8. On appeal, defendants Scott and Everett challenge their convictions on several grounds.

### Pre-Indictment Delay

Defendants' Scott and Everett first argument for reversal is their claim that the charges against them should have been dismissed for prejudicial pre-indictment delay. Defendants Scott and Everett argue that because an indictment was not returned by the grand jury until June 13, 1985, more than two years after the date of the fire, the charges against them should have been dismissed as overly stale.

The fire at the Charles Everett Beauty Shop occurred in the early morning hours of April 5, 1983. The District Court found

that from February 1, 1983 to approximately May 13, 1983, the defendants were engaged in a conspiracy to burn the restaurant and beauty shop in order to fraudulently collect insurance proceeds. Empanelled in May 1985, the grand jury returned an indictment on June 13, 1985.

Before the District Court, the United States argued pursuasively that the pre-indictment delay in this case did not result from governmental efforts to obtain a tactical advantage. The United States pointed out that although the defendants were suspects in this case very early, crucial evidence against them was unavailable until November 1984 when Robert Lowery was compelled to testify before the grand jury under a grant of immunity. Thereafter, an indictment might have been brought in January 1985 but for the fact that the Assistant United States Attorney handling the case left the office. Because of his departure, the case could not be presented to the grand jury until May, a date still within the applicable period of limitations.

Three distinctive substantive limitations govern governmental delay in prosecuting criminal charges: the statute of limitations, the Speedy Trial Clause of the Sixth Amendment as implemented by the Speedy Trial Act of 1974, 18 U.S.C. § 3161 *et seq.*, and the Due Process Clause of the Fifth Amendment to the United States Constitution.

■ The primary limitation on the government's ability to bring overly stale criminal charges is found in the statute of limitations. *United States v. Marion*, 404 U.S. 307, 322, 92 S.Ct. 455, 464, 30 L.Ed.2d 468 (1971); *United States v. West*, 568 F.2d 365, 367 (5th Cir.1978), *cert. denied sub nom. Swan v. U.S.*, 436 U.S. 958, 98 S.Ct. 3073, 57 L.Ed.2d 1123 (1978). The Speedy Trial Clause of the Sixth Amendment, as implemented by the Speedy Trial Act of 1974, also places limitations upon the government's ability to allow charges to grow stale. Nevertheless, the guarantees of the Speedy Trial Act are inapplicable to pre-indictment and pre-arrest delays. *United States v. Lovasco*, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977). Accordingly, because the appellants concede that the statute of limitations is not a bar to the charges in this case and because the Speedy Trial Act is inapplicable to claims of pre-indictment delay, appellants must turn to the Fifth Amendment.

The third and final limitation against bringing overly stale claims lies in the Fifth Amendment to the Federal Constitution. As the Supreme Court has noted, "the statute of limitations does not fully define the appellees' rights with respect to events occurring prior to indictment." *United States v. Marion*, 404 U.S. at 324, 92 S.Ct. at 465. Rather, the Due Process Clause plays a limited role in protecting a defendant against unfair pre-indictment delay. *Id. See also, United States v. Lovasco*, 431 U.S. at 789, 97 S.Ct. at 2048, and *United States v. Royals*, 777 F.2d 1089, 1090 (5th Cir.1985).

"[T]he Due Process Clause does not permit courts to abort criminal prosecutions simply because they disagree with a prosecutor's judgment as to when to seek an indictment." *United States v. Lovasco*, 431 U.S. at 790, 97 S.Ct. at 2049. Instead, a court may dismiss criminal charges as overly stale under the Fifth Amendment only if the government's actions have violated some fundamental principle of justice which lies at the base of our system of government. *Id.* at 790, 97 S.Ct. at 2048.

In reviewing a motion to dismiss criminal charges for prejudicial pre-indictment delay under the Fifth Amendment, a court must consider both the prejudice to the defendant and the reason for the delay. In this process, the defendant bears the initial burden of showing that the delay caused him "actual and substantial prejudice...." *United States v. Royals*, 777 F.2d at 1090. Actual prejudice cannot be proven through generalized claims of memory loss or by a claim that delay necessarily causes prejudice. The defendant must prove actual prejudice and prove that that prejudice resulted from some action on the part of the government to gain a tactical advantage.

*United States v. Lovasco,* 431 U.S. at 790, 97 S.Ct. at 2048. .

■ In the case now before the Court, it is clear that the District Court correctly determined that the defendants failed to demonstrate any Due Process violation. The defendants simply failed to clearly allege, much less prove, how the passage of time in this case up to the indictment caused them any actual or substantial prejudice. Their bald assertions regarding the loss of unknown alibi witnesses and alleged failure of memory do not support a finding of prejudice. Moreover, it is clear that the passage of time in this case did not result from the government's posturing of witnesses. Due Process claims for prejudicial pre-indictment delay are not properly raised simply because a defendant is unable to raise a colorable statute of limitations claim and we believe that the District Court correctly found appellants' claim in this case to be without merit.

### Severance

Prior to trial, Scott and Everett filed separate motions to sever their trials. Each sought a severance on several grounds. The District Court denied the motions and the appellants now argue that the denial of their motions to sever unfairly prejudiced them and was error.

Scott argues that the denial of his motion to sever unfairly prejudiced him in that the evidence against Everett so far outweighed the evidence against him that he was found guilty only by virtue of his association to Everett. · Part and parcel to Scott's argument is a claim that the extrinsic evidence offered at trial against Everett of prior crimes he had committed was considered by the jury in finding both he and Everett guilty. . Everett argues that the denial of his motion to sever unfairly prejudiced him by denying him the opportunity to examine Scott concerning the statement made by Scott to Rohner that the buildings were being burned for Everett.

Scott and Everett do not argue that the initial joinder of their trials under Federal Rule of Criminal Procedure 8 was inappro-priate but only that the District Court erred in denying their motions to sever under Rule 14. Federal Rule of Criminal Procedure 14 provides that

If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires.

In determining whether severance is appropriate under Rule 14, interests of judicial economy must be balanced against the prejudice that a joint trial will cause a defendant. *United States v. Phillips,* 664 F.2d 971, 1017 (5th Cir.1981), *cert. denied* 457 U.S. 1136, 102 S.Ct. 2965, 73 L.Ed.2d 1354 (1982) and 459 U.S. 906, 103 S.Ct. 208, 74 L.Ed.2d 166 (1982). In order to obtain a severance, a defendant must make a compelling showing of prejudice, *United States v. Merida,* 765 F.2d 1205, 1219 (5th Cir. 1985), and persons jointly indicted in a conspiracy case should generally be tried together, *United States v. Lee,* 744 F.2d 1124, 1126 (5th Cir.1984). The denial of a motion for severance pursuant to Rule 14 is within the. discretion of the District Court and may only be reversed upon a showing of abuse of discretion. *United States v. Merida,* 765 F.2d at 1219.

■ Having reviewed the record, the Court finds that Chief Judge Stagg carefully and correctly disposed of each motion and that he clearly did not abuse his discretion. As to appellant Scott's contentions, "[s]everance under Fed.R.Crim.P. 14 is an appropriate remedy for a disparity in the evidence only in the most extreme cases." *United States v. Harrelson,* 754 F.2d 1153, 1175 (5th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 277, 88 L.Ed.2d 241 (1986) and —— U.S. ——, 106 S.Ct. 599, 88 L.Ed.2d 578 (1985). While appellant Scott's contentions in this regard is not frivolous, the Court does not believe that the disparity rose to such a level as to require severance.

Similarly, the Court does not find meritorious Scott's contention that he was unable to obtain a fair trial in view of the admission into evidence against defendant Everett of his past involvement in arson. . "The pernicious effect of cumulation ... is best avoided by precise instructions to the jury on the admissibility and proper uses of ..." such evidence, *United States v. Harrelson*, 754 F.2d at 1195 (5th Cir.1985) *quoting United States v. Morrow*, 537 F.2d 120, 136 (5th Cir.1976) *cert. denied*, 430 U.S. 956, 97 S.Ct. 1602, 51 L.Ed.2d 806 (1977), and this is precisely the course of action taken by the District Court in this case.

"The remedy of severance is justified only if the prejudice flowing from a joint trial is clearly beyond the curative powers of a cautionary instruction." *United States v. Phillips*, 664 F.2d at 1017, *quoting United States v. Morrow*, 537 F.2d 120, 136 (5th Cir.1976), *cert. denied* 430 U.S. 956, 97 S.Ct. 1602, 51 L.Ed.2d 806 (1977). The transcript of the proceedings in the District Court clearly indicates that this case was not one where the alleged prejudice to Scott was beyond the power of a curative instruction. The District Court gave a clear and precise cautionary instruction regarding the admissibility of the extrinsic evidence offered against Everett and the jury verdicts support a conclusion that the cautionary instruction had the desired effect and permitted the jury to make individualized guilt determinations.

■ As with Scott, Everett's argument that the denial of his motion for severance impaired his ability to receive a fair trial fails. Everett argues that by denying his motion to sever, the District Court effectively denied him the opportunity to examine Scott regarding the statement he allegedly made to Rohner that they were burning the buildings for Everett. Nevertheless, Everett presented no assurances that Scott would testify if tried separately and the mere possibility that a co-defendant might testify if severed does not warrant severance. *United States v. Grapp*, 653 F.2d 189 (5th Cir.1981).

## Extrinsic Evidence

The third assignment of error in this appeal is Everett's claim that the District Court erred in allowing into evidence against him certain testimony of prior crimes. This testimony related to Everett's alleged involvement in the arson burning of the Stall Lounge and a duplex home on behalf of Robert Lowery.

In *United States v. Beechum*, 582 F.2d 898 (5th Cir.1978) *cert. denied*, 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979), this Court set forth a two-part test for determining the admissibility of extrinsic evidence under Fed.R.Ev. 404(b). The first prong of that test requires that the extrinsic evidence be relevant to an issue other than the defendant's character. Extrinsic evidence may be deemed relevant to an issue other than character under the first prong only if the defendant committed the alleged act. *Id.* at 912. *See also United States v. Guerrero*, 650 F.2d 728, 733 (5th Cir.1981). Whether the defendant committed the alleged offense is a question of fact for the jury and should be resolved against the government "only where the jury could not find the preliminary fact to exist." *United States v. Guerrero*, 650 F.2d at 733, *quoting United States v. Beechum*, 582 F.2d at 913.

The second prong of the *Beechum* test requires that the probative value of the evidence not be substantially outweighed by unfair prejudice to the defendant and that the evidence satisfy all other requirements of Federal Rule of Evidence 403. *United States v. Guerrero*, 650 F.2d at 734.

■ Following a carefully conducted *Beechum* hearing, the District Court admitted into evidence testimony of Everett's past involvement with arson. The District Court's ruling on this issue was extensive and thorough. Initially, the District Court found that Lowery's testimony indicated that Everett was involved in a conspiracy to burn the Stall Lounge for $7500.00 and a duplex home for $2500.00 on Lowrey's be-

half. Photographs of the devices used to burn those two buildings revealed that they were identical to the devices used to burn the El Toro restaurant and Charles Everett Beauty Shop. They were, according to the District Court, "signature" devices.

In considering the admissibility of this evidence, the District Court also looked at the prosecutorial need for the evidence, the undue prejudice to the defendant, the temporal proximity of the extrinsic acts to the charged events and the essential link of Everett to all events. Based upon these factors, the District Court concluded that the two-fold *Beechum* requirements were satisfied.

Upon review of the record, we are satisfied that the District Court correctly determined that the *Beechum* requirements were satisfied and that the evidence was properly admissible.

### James Issue

Defendant Everett's fourth argument on appeal is his claim that the District Court erred in allowing into evidence Rohner's testimony concerning statements made to him by Scott. As noted earlier, Rohner testified that Scott told him that the restaurant and beauty shop were being burned for Everett. Everett argues that this testimony should have been excluded as inadmissible hearsay.

Federal Rule of Evidence 801(d)(2)(E) provides that "a statement is not hearsay if ... the statement is offered against a party and is ... a statement by a conspirator of a party during the course and in furtherance of the conspiracy."

In order for a conspiratorial statement to be admissible under Rule 801(d)(2)(E), the government must show by a preponderance of the evidence, independent of the statements in issue, (1) that a conspiracy existed, (2) that the coconspirators and the defendant were members of the conspiracy, and (3) that the statements were made during the course of and in furtherance of the conspiracy. *United States v. James*, 590 F.2d 575, 579 (5th Cir.1979), *cert. denied*, 442 U.S. 917, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979). *See also, United States v. Manzel-*

*la*, 782 F.2d 533, 544–45 (5th Cir.1986), *cert. denied sub nom. Jimenez v. United States*, —— U.S. ——, 106 S.Ct. 1991, 90 L.Ed.2d 672 (1986) and *United States v. Lamp*, 779 F.2d 1088, 1094 (5th Cir.1986), *cert. denied*, —— U.S. ——, 106 S.Ct. 2255, 90 L.Ed.2d 700 (1986) and *sub nom. Eberwine v. U.S.*, —— U.S. ——, 106 S.Ct. 3283, 91 L.Ed.2d 572 (1986).

■ As with the *Beechum* issue, the District Court in this case carefully and thoroughly considered the admissibility of the challenged portions of Rohner's testimony. In doing so, the Court concluded that the government had proven, by a preponderance of the evidence, the existence of each element necessary to bring Rohner's testimony within the scope of the Rule 801(d)(2)(E) exception. The District Court found that the government had proven that Everett obtained insurance on the damaged property less than 24 hours before the fire and that the incendiary devices found inside the restaurant strongly suggested that arson was involved. The government had also proven that Everett obtained the necessary insurance only after having failed to do so twice in the preceding few days. This evidence together with Rohner's testimony that he and Scott placed the incendiary devices in the restaurant and beauty shop led the District Court to conclude that each of the *James* elements were satisfied.

Having carefully reviewed the record, we find Chief Judge Stagg's conclusions that a conspiracy existed, that Everett was involved in that conspiracy, and that Scott's statement was made in furtherance of the conspiracy to be fully supported.

### Motion for Judgment of Acquittal

■ At the close of the government's case in chief, at the close of all evidence and after discharge of the jury, Scott made a motion for acquittal. Scott now argues that the District Court erred in failing to grant this motion as the evidence was insufficient to convict him and the jury verdict itself fatally inconsistent.

When ruling on a motion for judgment of acquittal, the Court must determine wheth-

er a reasonable trier of fact could have found that the evidence established guilt beyond a reasonable doubt. *United States v. Bell,* 678 F.2d 547, 549 (5th Cir.1982) (en banc), *aff'd on other grounds,* 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983). In doing so, the evidence must be viewed in the light most favorable to the jury verdict, *United States v. Grubbs,* 776 F.2d 1281, 1289 (5th Cir.1985), and it must be remembered that "it is the sole province of the jury to weigh the evidence and the credibility of the witnesses," *United States v. Martin,* 790 F.2d 1215, 1219 (5th Cir.1986) *quoting United States v. Davis,* 752 F.2d 963, 968 (5th Cir.1985). As to allegedly inconsistent jury verdicts, each count must be separately considered and allowed to stand if supported by the evidence. *United States v. Romeros,* 600 F.2d 1104 (5th Cir.1979), *cert. denied,* 444 U.S. 1077, 100 S.Ct. 1025, 62 L.Ed.2d 759 (1980), *citing Dunn v. United States,* 284 U.S. 390, 393–94, 52 S.Ct. 189, 190–91, 76 L.Ed.2d 356 (1932).

In the present case, it is clear that what the appellant seeks to do is have this Court exclude the testimony of Timothy Rohner and other witnesses as inadmissible as a matter of law for lack of credibility and thereafter find the jury verdict unsupported by the evidence. This the Court will not do. The District Court correctly determined that the jury verdict was supported by the evidence and defendant's arguments on appeal must be rejected.

Having rejected each of appellant's arguments and finding that their remaining contentions do not merit discussion, their convictions are hereby AFFIRMED.