**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 93-7719

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

versus

A. GUY CROUCH, III and
MICHAEL J. FRYE,

Defendants-Appellees.

Appeal from the United States District Court
for the Southern District of Texas

(April 20, 1995)

Before POLITZ, Chief Judge, GARWOOD and BENAVIDES, Circuit Judges.

POLITZ, Chief Judge:

The district court dismissed indictments against A. Guy Crouch, III and Michael J. Frye which arose out of alleged illegal banking activity. For the reasons assigned, we affirm.

<u>Background</u>

In March of 1986, while examining the records of Delta Savings Association of Texas, a failed institution, federal investigators discovered that the institution had been engaged in a "cash for

trash" scheme.[1] Delta officials violated federal regulations which prohibited excessive loans to one borrower by using bogus nominee borrowers who bore no personal liability for the loans contracted.

Criminal referrals issued for Carl Gerjes, Delta's president, Robert Ferguson, an involved real estate investor, Crouch, Delta's attorney and chairman of its board of directors, and Frye who allegedly acted through a corporate alter ego, JMG Financial, as a nominee borrower for Ferguson. In 1986 the government began an investigation into Delta's activities, focusing on Gerjes and Ferguson, leading to the conviction of Gerjes in 1989 and his guilty plea conviction on separate but related offenses in 1992, as well as Ferguson's conviction in 1992. On November 12, 1992 a 19-count indictment was handed up against Crouch and Frye, charging misapplication of funds, 18 U.S.C. §§ 2, 657; false entries, 18 U.S.C. §§ 2, 1006; false statements, 18 U.S.C. §§ 2, 1014; and bank fraud, 18 U.S.C. §§ 2, 1344.

Citing the eight-plus years between the alleged crimes in 1984-85 and the indictment, Crouch and Frye asserted prejudice from the pre-indictment delay and moved for dismissal. A magistrate judge recommended dismissal because of both presumptive and actual prejudice caused by the passage of time. Following a *de novo* review the district court adopted the recommendation, holding that

---

[1]Delta made loans to real estate investors conditioned on their purchase of property acquired by Delta primarily through prior defaults. The "sale" of this property reduced Delta's liabilities, lowered its required cash reserves, and artificially increased its net worth, thereby evading closer inquiry into its operations.

defendants had suffered presumptive prejudice because of the delay and finding actual prejudice resulting from the delay due to the unavailability of testimony because of death and memory loss and the disappearance of exculpatory records. Applying the balancing test directed in **United States v. Brand**[2] and in **United States v. Townley**[3] for claimed violations of due process resulting from pre-indictment delay, the court found that the government's assigned reason for delay, the lack of resources, did not outweigh the prejudice suffered by Crouch and Frye. The court dismissed the indictment; the government timely appealed.

## Analysis

The government faults the district court's use of the **Brand**/**Townley** balancing test. Even assuming Crouch and Frye were able to show prejudice, the government contends that their inability to demonstrate prosecutorial bad faith for the dilatory indictment defeated their motion for dismissal. It cites post-**Townley** decisions for the proposition that to establish a due process violation based on pre-indictment delay a defendant must show that the prosecutor intentionally delayed the indictment to gain tactical advantage.[4]

---

[2]556 F.2d 1312 (5th Cir. 1977), <u>cert</u>. <u>denied</u>, 434 U.S. 1063 (1978).

[3]665 F.2d 579 (5th Cir.), <u>cert</u>. <u>denied</u>, 456 U.S. 1010 (1982).

[4]<u>See</u> **United States v. Byrd**, 31 F.3d 1329 (5th Cir. 1994); **United States v. Neal**, 27 F.3d 1035 (5th Cir.), <u>cert</u>. <u>denied</u>, _____ U.S. _____, 115 S.Ct. 1165 (1994); and **United States v. Amuny**, 767 F.2d 1113 (5th Cir. 1985).

3

In **United States v. Marion**[5] the Supreme Court held that although the primary protection against undue delay prior to arrest, indictment, or information is the appropriate statute of limitations, the due process clause of the fifth amendment offers some protection from prejudice to a defendant's case arising from this delay. The Court accepted, as an example, the government's contention that if it be shown that the government had created the prejudicial delay as "an intentional device to gain tactical advantage over the accused,"[6] due process would require the automatic dismissal of the indictment.

Following **Marion** we began the development of a test for violations of due process in this context. Despite the **Marion** Court's express refusal to "determine when and in what circumstances actual prejudice resulting from pre-accusation delays requires the dismissal of the prosecution,"[7] in *dicta* we used the statement that a showing of prosecutorial bad faith required automatic dismissal for the very different proposition that such a showing was a *sine qua non* for the finding of a due process violation.[8] Because the defendants in those cases were unable to

---

[5]404 U.S. 307 (1971).

[6]404 U.S. at 322.

[7]**Id.**

[8]See, e.g., **United States v. Avalos**, 541 F.2d 1100 (5th Cir. 1976), cert. denied, 430 U.S. 970 (1977); **United States v. Butts**, 524 F.2d 975 (5th Cir. 1975).

**Avalos**, however, noted a *caveat* to use of a standard requiring a showing of prosecutorial bad faith, stating:

4

make a showing of prejudice due to delay, we did not apply this statement in a dispositive ruling.

The Supreme Court next considered this issue in **United States v. Lovasco**,[9] stating that proof of prejudice was "a necessary but not sufficient element of a due process claim, and that the due process inquiry must consider the reasons for the delay as well as the prejudice to the accused,"[10] including the inquiry whether the delayed prosecution violates "elementary standards of fair play and decency"[11] and "fundamental conceptions of justice which lie at the base of our civil and political institutions."[12]  After balancing the prejudice caused by an 18-month delay against the government's reason for delay -- its continuing investigation -- the **Lovasco** Court upheld dismissal of the indictment.

The **Lovasco** Court also noted that following **Marion** neither it nor any lower appellate court had "had a sustained opportunity to consider the constitutional significance of various reasons for

---

> There is no Supreme Court authority squarely holding that satisfaction of both elements of the test is necessary to find a due process violation [and] there remains substantial doubt whether, in a case in which actual pre-accusation prejudice was overwhelming, the government's purposeful delay would have to be shown; or, alternatively, where the government's misconduct was blatant, whether the defendant would still bear the burden of showing actual prejudice.

541 F.2d at 1107 n.9.

[9]431 U.S. 783 (1977).

[10]**Id.** at 790.

[11]**Id.** at 795.

[12]**Id.** at 790 (citations omitted).

5

delay."[13]  Instead of passing upon this issue, the Court opted to leave such rulings to future decisions of the lower courts applying "the [aforementioned] settled principles of due process."[14]

In **Brand**, one of our first cases applying the teaching of **Lovasco**, after noting that actual prejudice must be shown as a threshold matter, we stated that **Lovasco** did "not indicate that governmental interests not amounting to an intentional tactical delay will automatically justify"[15] such prejudice.  Rather, we concluded that **Lovasco** stood for balancing the government's need for the delay against the actual prejudice suffered by the defendant.

We next addressed the issue in **Townley** and crystallized the test for due process violations thusly:

> [T]he accused bears the burden of proving the prejudice and, if the threshold requirement of actual prejudice is not met, the inquiry ends there.  Once actual prejudice is shown, it is necessary to engage in a sensitive balancing of the government's need for an investigative delay against the prejudice asserted by the defendant.  The inquiry turns on whether the prosecution's actions violated fundamental conceptions of justice or the community's sense of fair play and decency.  Inherent in the adoption of a balancing process is the notion that particular reasons are to be weighed against the particular prejudice suffered on a case-by-case basis. . . . [D]ue process . . . turns upon whether the degree of prejudice thereby sustained by the accused is sufficiently balanced by the good-faith reasons advanced by the government.[16]

_____

[13]**Id.** at 797.

[14]**Id.**

[15]556 F.2d at 1317 n.7.

[16]665 F.2d at 582 (citations omitted) (emphasis added).

6

The **Townley** court left no doubt that a showing of bad faith by the government was not a requisite for a due process violation.  We noted:

> [T]he **Lovasco** balancing test would be reduced to mere words if indeed the government's 41-month delay in bringing the indictment were excusable, whatever the prejudice caused the defendant, simply by a showing that the government was negligent, however grossly, and not bad-intentioned.[17]

Several subsequent decisions overlooked **Townley**'s holding and relied on the *dicta* from pre-**Lovasco** cases for stating that pre-indictment delay may result in dismissal of an indictment only when the delay resulted from an ill-intentioned act by the government.[18]  In accordance with our long-established rule, we are bound to follow the earliest dispositive articulation of a rule as the decision of one "panel may not overrule the decision, right or wrong, of a prior panel in the absence of *en banc* reconsideration or superseding decision of the Supreme Court."[19]  We therefore must apply the **Brand**/**Townley** balancing test as the binding precedent. The district court correctly relied upon the holdings of **Brand** and **Townley** in its evaluation of the merits of defendants' motion to dismiss.

---

[17]**Id.**

[18]**United States v. Wehling**, 676 F.2d 1053 (5th Cir. 1982).  <u>See also</u>, <u>e.g.</u>, **Amuny**; **Byrd**; **Neal**; and **United States v. Beszborn**, 21 F.3d 62 (5th Cir.), <u>cert</u>. <u>denied</u>, _____ U.S. _____, 115 S.Ct. 330 (1994).

[19]**Burlington Northern Railroad Co. v. Brotherhood of Maintenance Way Employees**, 961 F.2d 86, 89 (5th Cir. 1992), <u>cert</u>. <u>denied</u>, _____ U.S. _____, 113 S.Ct. 1028 (1993) (citations omitted).

7

We find merit in one part of the government's challenge to the district court's ruling, specifically its holding that the passage of approximately eight years from the alleged commission of the crimes to the issuance of the indictment was presumptively prejudicial. As authority the trial court cited **United States v. Doggett**,[20] which involved <u>post</u>-indictment delay, as support for the existence of presumptive prejudice in this <u>pre</u>-indictment delay case. We find this reliance misplaced as "<u>pre</u>-indictment delay does not raise a Sixth Amendment issue, but is instead examined under the due process clause of the Fifth Amendment."[21]

Our precedents require that the triggering prejudice be actual, not presumptive. Twenty years ago we stated that

> when pre-indictment delay is asserted, <u>actual</u> <u>prejudice</u> and not merely the real possibility of prejudice inherent in any extended delay is a necessary element which must be shown before the restraints of the due process clause will be applied to bar a prosecution because of a delay.[22]

**Townley** and subsequent decisions[23] recognized that the defendant must show proof of actual prejudice as a threshold requirement.

---

[20]_____ U.S. _____, 112 S.Ct. 2686 (1992).

[21]**Byrd**, 31 F.3d at 1339 (emphasis in original); **Marion**.

[22]**United States v. McGough**, 510 F.2d 598, 604 (5th Cir. 1975) (emphasis added) (citations omitted). <u>Accord</u>, **Butts** at 977 ("The mere passage of time [does] not constitut[e] the type of actual prejudice necessary to set aside an indictment returned within the appropriate statute of limitations. . . ."); **United States v. West**, 568 F.2d 365, 367 (5th Cir.), <u>cert</u>. <u>denied</u>, 436 U.S. 958 (1978) ("[I]t is readily inferable from the decisions of this court that the defendants generally bear the burden of establishing actual prejudice.").

[23]**Byrd**; **Neal**; **Beszborn**; **Amuny**.

8

The district court's conclusion that there was presumptive prejudice from the mere passage of time was incorrect.

The court *a` quo* also based its decision, however, upon its finding of actual prejudice, focusing upon Crouch's loss of testimony due to the deaths of several potential witnesses, and upon Frye's claim that critical and exculpatory documentary evidence was missing. The government challenges this finding, contending that the defendants' claim of prejudice consists only of vague assertions of lost witnesses, faded memories, or misplaced documents.

Findings of actual prejudice are reviewed under the clear error standard.[24] We find no such error present. The record supports the finding of prejudice due to the above factors, reflecting that Crouch established exactly which witnesses were lost and how the lost witnesses were crucial to rebut the credibility and character of Gerjes and Ferguson, potentially the government's star witnesses.[25] These potential witnesses included his father, A. Guy Crouch, Jr., who, as a former board president and major stockholder of Delta, would have testified in support of Crouch's claim that Gerjes had misled the board and other Delta officers about his unauthorized operations. Other corroborating witnesses included Tranquillo Gubert, another director, and Larry Tscherner, former vice president of an entity involved in the

---

[24]**Beszborn**, 21 F.3d at 66.

[25]Further, the record indicates that because of Crouch's cooperation against Gerjes, there is the likelihood of the latter's animosity.

scheme, who would have testified about their dealings with Gerjes and Ferguson. As Gerjes and Ferguson likely would be cooperating with the government in its prosecution of Crouch and Frye, the lost testimony would also be crucial for rebuttal and impeachment purposes.

The record also contains references to lost exculpatory documentary evidence, including a lost "Profit Participation Agreement" between Frye and Ferguson's corporations that allegedly would have shown Frye's intent to work with Ferguson in developing the land purchased, rebutting claims that Frye was not materially involved with the loan and land purchase. Further, the authenticity of a copy of a document constituting evidence of an overt act of the conspiracy poses a material issue. The government claims that Frye forged signatures to a waiver of notice form that allegedly facilitated his purchase of the "trash" real estate. The record establishes that only an original copy can be examined for authenticity and, as the original cannot be found, there is now no method by which Frye can show that the signatures on the waiver were authentic. The record also reflects that both Frye and Crouch had lost, either through routine disposal or surrender to authorities,[26] personal records that could have assisted in rebutting proof of their guilt. Some of these lost documents were irreplaceable; this fact, when combined with both expert evidence validating the defendants' claim of memory loss and the

---

[26]Crouch bases his failure to retain records in part upon his receipt, on at least three separate occasions, of assurances from the government that he was not a target of any investigation.

10

aforementioned lost exculpatory testimony, amply supports the court's finding that Crouch and Frye suffered significant actual prejudice.

Consistent with **Townley**'s holding, after finding actual prejudice from pre-indictment delay, the court must weigh the actual prejudice suffered against the reasons for the delay. The record reflects that the government had knowledge of Crouch's and Frye's involvement dating, at the very latest, from its August 1986 receipt of the criminal referrals, but did not initiate an investigation until, at the very earliest, May of 1991. The reasons for the long delay in launching the investigation were, essentially, lack of manpower and the low priority which this investigation was assigned. Although "prosecutorial overload and insufficient personnel[] might be entitled to slight weight in the balance of due process considerations,"[27] this slight weight is insufficient to outweigh the actual prejudice to Crouch and Frye caused by the lengthy pre-indictment delay.[28] Under the circumstances presented by this particular case, we conclude that requiring Crouch and Frye to stand trial now would be fundamentally unfair and violative of due process.

The judgment of the district court dismissing the indictment is AFFIRMED.

---

[27]665 F.2d at 586.

[28]Although the actual delay was longer (by about 18 months), the period of the investigation is not considered. See **Lovasco**, supra.

11

GARWOOD, Circuit Judge, dissenting:

I respectfully dissent.

My first concern is that the majority departs from the overwhelming weight of precedent in this Circuit by holding that, where limitations have not run, a defendant may nevertheless prevail on a due process claim of pre-indictment delay even though the government did not intentionally delay the indictment to gain tactical advantage or for other impermissible purpose, and the delay arose only because of the lack of manpower and the low priority assigned the investigation. A less than exhaustive review of this Court's published opinions since *United States v. Lovasco*, 97 S.Ct. 2044 (1977), reflects that at least twenty-nine different judges of this CourtSQtwenty-five of the thirty-two individuals who have ever served as an active or senior judge of this Court since it split October 1, 1981SQhave authored, or joined without reservation, unanimous opinions in some eighteen different cases holding or stating in substance that "[t]o prove that pre-indictment delay violated his due process rights, a defendant must demonstrate that the prosecutor intentionally delayed the indictment to gain a tactical advantage *and* that the defendant incurred substantial prejudice as a result of the delay." *United States v. Byrd*, 31 F.3d 1329, 1339 (5th Cir. 1994).[29]

---

[29]   Other post-*Lovasco* published opinions of this Court so holding or stating include:  *United States v. Neal*, 27 F.3d 1035, 1041 (5th Cir.), *cert. denied*, 115 S.Ct. 1165 (1994); *United States v. Beszborn*, 21 F.3d 62, 65-66 (5th Cir.), *cert. denied*, 115 S.Ct. 330 (1994); *United States v. Hooten*, 933 F.2d 293, 296 (5th Cir.

Citing our acknowledged rule that "one panel may not overrule the decision, right or wrong, of a prior panel in the absence of *en banc* reconsideration or superseding decision of the Supreme Court,"[30] the majority justifies its departure from the foregoing mass of Fifth Circuit precedent by reliance on *United States v. Brand*, 556 F.2d 1312 (5th Cir. 1977), *cert. denied*, 98 S.Ct. 1237 (1978), and *United States v. Townley*, 665 F.2d 579 (5th Cir.), *cert. denied*, 102 S.Ct. 2305 (1982). Laying aside the thought that we may have had the functional equivalent of *en banc* establishment of the rule most recently stated and applied in *Byrd*, it is in any event clear to me that *Brand* and *Townley* cannot bear the weight assigned them.

As to *Brand*, its statements that intentional delay for tactical advantage need not be shown and that instead the reasons for the delay should be balanced against the resulting prejudice,

---

1991); *Dickerson v. Guste*, 932 F.2d 1142, 1144 (5th Cir.), *cert. denied*, 112 S.Ct. 214 (1991); *United States v. Delario*, 912 F.2d 766, 769 (5th Cir. 1990); *United States v. Varca*, 896 F.2d 900, 904 (5th Cir.), *cert. denied*, 111 S.Ct. 209 (1990); *United States v. Carlock*, 806 F.2d 535, 549 (5th Cir. 1986), *cert. denied*, 107 S.Ct. 1161 (1987); *United States v. Johnson*, 802 F.2d 833, 835, 836 (5th Cir. 1986); *United States v. Scott*, 795 F.2d 1245, 1249 (5th Cir. 1986); *United States v. Ballard*, 779 F.2d 287, 293 (5th Cir.), *cert. denied*, 106 S.Ct. 1518 (1986); *United States v. Amuny*, 767 F.2d 1113, 1119-1120 (5th Cir. 1985); *United States v. Wheling*, 676 F.2d 1053, 1059 (5th Cir. 1982); *United States v. Hendricks*, 661 F.2d 38, 39-40 (5th Cir. 1981); *United States v. Nixon*, 634 F.2d 306, 310 (5th Cir. 1981); *United States v. Durnin*, 632 F.2d 1297, 1299-1300 (5th Cir. 1980); *United States v. Ramos*, 586 F.2d 1078, 1079 (5th Cir. 1978); *United States v. Willis*, 583 F.2d 203, 207 (5th Cir. 1978).

[30] *Burlington Northern Railroad Co. v. Brotherhood of Maintenance Way Employees*, 961 F.2d 86, 89 (5th Cir. 1992), *cert. denied*, 113 S.Ct. 1028 (1993) (citations omitted).

13

556 F.2d at 1317 n.7, are plainly dicta.[31]  *Brand* rejected the defendant's pre-indictment delay claim because he had not demonstrated any prejudiceSQan admitted requirement for relief irrespective of the reasons for the delay.  *Id*. at 1316-1317.  At the end of the prejudice discussion in the textSQwhich never even adverts to whether a further showing beyond prejudice is requiredSQfootnote 7 is called for.  It is only in this footnote that the language relied on by the majority appears.  However, by this stage the *Brand* court had already determined to deny relief because of the absence of prejudice.  Moreover, nothing in footnote 7 of *Brand*SQor in its textSQidentifies the reason for the delay or purports to characterize the reason as either being or not being intentional for tactical advantage, or negligent, or otherwise improper or insufficient.  Nor does anything in *Brand*SQin its text or its footnotesSQpurport to balance the reason for the delay against the prejudice to the defendant (which, of course, it could not, as it had already concluded there was no prejudice).  *Brand* did not *apply* a balancing test, and the affirmance in *Brand* cannot be said to rest, even alternatively, on its general statement in footnote 7 that a defendant need not show intentional tactical delay by the prosecution.  Thus, *Brand*'s footnote 7 forms no part of its *ratio decidendi*, and is purely dicta.

---

[31]    As the majority inferentially recognizes, dicta by one panel does not bind a subsequent panel. *See Matter of Dyke*, 943 F.2d 1435, 1445 & n.28 (5th Cir. 1991); *Nicor Supply Ships Associates v. General Motors*, 876 F.2d 501, 506 (5th Cir. 1989). As a practical matter, such a principle is necessary to the effective functioning of a large multi-panel court such as the Fifth Circuit.

*Townley*SQa quorum decision by two judgesSQmay well be a holding rather than simply dicta. In *Townley* we concluded that there was no evidence that the delay was due to "bad faith motive to prejudice" the defendant. 665 F.2d at 581. Under the rationale of *Byrd* and its predecessors, that alone would have justified affirmance, even though we concluded that "the lengthy pre-indictment delay somewhat prejudiced Townley." *Id.* at 586. However, we proceeded to actually balance the extent of the prejudice against the reasons for the delay, stating that such a balancing could show a due process violation from pre-indictment delay even though there was no "intentional tactical delay or harassment on the part of the government." *Id*. at 582. We ultimately concluded that the way the trial actually unfolded, and particularly the way the government sought to prove its case, was such that the prejudice to Townley was not sufficiently substantial, when balanced against the reasons for the delay ("the press of other investigations . . . low-priority accorded to the present investigations and . . . changes of governmental prosecuting personnel," *id*. at 581), as to amount to a denial of due process.[32]

Assuming, then, that *Townley* is holding, not dicta, it is nevertheless not binding because it conflicts with our earlier holding in *United States v. Durnin*, 632 F.2d 1297 (5th Cir. 1980). In *Durnin*, we rejected a due process claim of pre-indictment delay

---

[32]    As discussed in the text below, it is also significant that in *Townley* we reviewed (and affirmed) a conviction following trial, while here we review a *pre*-trial dismissal.

15

on the *sole* basis that the defendant had not shown a motive on the part of the prosecutor to use the delay for tactical advantage, and we did so without even evaluating the presence or extent of prejudice:

> "Appellant alleges that the delay denied him due process because he lost the testimony of an important witness in the interim between when the government could have brought an indictment and when it finally chose to do so. However, to establish a violation of the Due Process Clause in this context, appellant *must show*, *not only* substantial prejudice flowing from an inordinate delay, *but also a motive on the part of the prosecutor to use the delay to gain a tactical advantage. . . .* [citations] Appellant does not contend that the government sought to delay his indictment for tactical advantage, and the district court specifically found that the delay resulted from the government's good-faith attempt to ascertain appellant's guilt beyond a reasonable doubt. Since this finding is abundantly supported by the record, the district court's ruling on the motion to dismiss must be affirmed." *Id*. at 1299-1300 (citations and footnote omitted; emphasis added).

There is no reasonable basis upon which *Townley* can be characterized as holding while at the same time treating *Durnin* as dicta. *Durnin* is thus the controlling precedent. The overwhelming weight of authority in this Circuit is to the same effect. *See* note 1, *supra,* and accompanying text. Accordingly, I am unable to agree to the majority's application of a contrary rule.[33]

---

[33] I note in passing that the Fifth Circuit does not stand alone in its holdings that to sustain a due process claim of pre-indictment delay the defendant must show "not only substantial prejudice . . . but also a motive on the part of the prosecutor to use the delay to gain a tactical advantage." *Durnin* at 1299. In *United States v. Sowa*, 34 F.3d 447, 450 (7th Cir. 1994), the Seventh Circuit stated,

> "To establish that a pre-indictment delay violated due process, [defendant] Sowa must prove that the delay caused actual and substantial prejudice to his fair trial rights, *and* there must be a showing that the government

16

My second concern is that here the entire indictment as to Crouch and Frye has been dismissed *prior* to trial. It seems to me that only the very clearest showing of virtually *certain* substantial *actual trial* prejudice should justify such a *pretrial* dismissal. In my view, this high standard of proof has not been met here.

I begin by noting that the right here asserted is the right to avoid an unfair conviction, not the right to be free of a trial which will likely be unfair. In *United States v. MacDonald*, 98 S.Ct. 1547, 1553 (1978), the Supreme Court held that "[u]nlike the protection afforded by the Double Jeopardy Clause, the Speedy Trial Clause does not . . . encompass a 'right not to be tried' which must be upheld prior to trial if it is to be enjoyed at all." The same conclusion applies, *a fortiori*, to due process claims of pre-

---

> delayed indictment to gain a tactical advantage or some other impermissible reason . . . . Sowa's claim . . . fails to meet the requirements of the second prong. . . . [D]ue process is only implicated if the government purposely delayed the indictment to take advantage, tactically, of the prejudice or otherwise acted in bad faith."

The Second Circuit stated the same rule in *United States v. Hoo*, 825 F.2d 667, 671 (2d Cir. 1987), *cert. denied*, 108 S.Ct. 742 (1988). In his dissent from the denial of *certiorari* in *Hoo*, Justice White observed that the First, Third, Tenth, and Eleventh Circuits, in addition to the Second, "have similarly required a showing of prosecutorial misconduct designed to obtain a tactical advantage over the defendant or to advance some other impermissible purpose in order to establish a due process violation." *Hoo v. United States*, 108 S.Ct. 742 (1988) (White, J., dissenting from denial of *certiorari*). Justice White identified the Fourth and Ninth Circuits as applying a balancing test. *Id.*

17

indictment delay.[34]  The Supreme Court further stated in *MacDonald*:

> "Before trial, of course, an estimate of the degree to which delay has impaired an adequate defense tends to be speculative. . . .  The essence of a defendant's Sixth Amendment claim in the usual case is that the passage of time has frustrated his ability to establish his innocence of the crime charged.  Normally, it is *only* after trial that that claim may fairly be assessed."  *Id*. at 1552 (emphasis added).

Again, this fully applies to claims of pre-indictment delay.  The denial of relief before trial in no way precludes the accused, if convicted, from successfully demonstrating that the undue and improper pre-indictment delay substantially and unfairly prejudiced his ability to avoid that result.  Thus in *United States v. Marion*, 92 S.Ct. 455, 466 (1971), the Supreme Court reversed the pretrial dismissal for pre-indictment delay, but observed that "[e]vents of the trial may demonstrate actual prejudice, but at the present time appellees' due process claims are speculative and premature."  *See also McDonald*, 98 S.Ct. at 1552 ("The denial of a pretrial motion to dismiss an indictment on speedy trial grounds does not indicate that a like motion made after trialSQwhen prejudice can better be gaugedSQwould also be denied.").

These realities, it seems to me, dictate the conclusion that a far stronger showing should be required to sustain a claim of due process pre-indictment delay prior to trial than would be required

---

[34]    Even statutes of limitation have been held not to create a right not to be tried.  *See United States v. Weiss*, 7 F.3d 1088 (2d Cir. 1993).  Although pre-trial dismissals on limitations grounds are not uncommon, that is because the date of the offense appears on the face of the indictment and the question is a purely legal one; the reasons for the delay in indictment and whether it is prejudicial are generally irrelevant to the limitations issue.

after trial and conviction.  I believe that experience bears this out.  So far as I am aware, there is only one reported federal appellate decision sustaining such a pretrial dismissal, a 1976 decision by a divided panel of the Eighth Circuit.  *United States v. Barket*, 530 F.2d 189 (8th Cir. 1976).  There are *no* such decisions since *Lovasco*.[35]  This silence speaks volumes.

*Townley* provides a compelling example of how a strong pretrial showing of substantial prejudice may ultimately dissolve in the context of the actual trial itself.  There, the defendant Townley and his partner Owens were charged with mail fraud in connection with inducing persons to purchase and invest in nonexistent vending machines.  *Townley,* 665 F.2d at 582.  Townley claimed that due to pre-indictment delay he was unable to show that he really believed the machines would be produced and would be a valuable investment for the purchasers.  We concluded that the requisite substantial prejudice would have been shown "had the thrust of the government's case" as presented at trial "been that Townley well knew that he and Owens could not deliver the machine sold or that the scheme could not be successful."  *Id*. at 583.  We found no such substantial prejudice, however, *because* "the main thrust of the government's case," as presented at trial, "concerned [particular] misrepresentations made by Townley in the sale of the machines."

---

[35]     Shortly after *Barket*, another divided panel of the Eighth Circuit again sustained the pretrial dismissal of three counts of a four-count indictment on a due process, pre-indictment delay basis.  *United States v. Lovasco*, 532 F.2d 59 (8th Cir. 1976).  However, the Supreme Court reversed.  *United States v. Lovasco*, 97 S.Ct. 2044 (1977).

19

*Id.* Townley also claimed prejudice from being unable to adequately corroborate his testimony that, as soon as he discovered Owens' fraud, he took action to protect the investors. We rejected this based on the approach taken by the government at trial:

> "Insofar as counsel was unable to corroborate Townley's testimony that (after he had discovered Owens' fraud) he had informed the financing company not to approve any further applications for credit by investor-purchasers, the government expressly stated it would not dispute Townley's testimony, and neither by argument nor evidence did it attempt to cast doubt upon this creditable act by Townley or upon his two customer-witnesses whose testimony tended to corroborate him. The government further made full disclosure of its files to Townley's attorney to aid him in the preparation of the defense." *Id.* at 585-86 (citation omitted).[36]

Another instructive decision of ours in this respect is *United States v. McGough*, 510 F.2d 598 (5th Cir. 1975). There, we reversed a pretrial dismissal order based on a due process claim of pre-indictment delay. We described the claim as follows:

> "McGough's assertion of actual prejudice to his defense is based primarily upon the death of some six potential defense witnesses. Some of these witnesses, McGough claimed, would have testified as to firsthand knowledge of several of the transactions which entered into the government's calculation of the amount understated; the testimony of others might impeach government witnesses. . . . [T]he government asserted at the hearings that it had expected two of them to be government witnesses, rather than witnesses for the defense." *Id.* at 604.

Although we observed that we could "find no indication that the trial court weighed the contradictory factual assertions before stating that there was actual prejudice," *id.* at 604, we nevertheless did *not* remand for further findings in that respect,

---

[36] We even observed that the government did not use but "had available" a witness "who would have cast doubt on Townley's exculpatory testimony." *Id.* at 586.

20

but rather ordered that "the case is remanded for a prompt trial." *Id*. at 605. In this respect we quoted *Marion*, 92 S.Ct. at 466: "'Events of trial may demonstrate actual prejudice, but at the present time appellees' due process claims are speculative and premature.'" *Id*. at 604-5. So it is here. *See also, e.g., Robinson v. Whitley*, 2 F.3d 562, 571 (5th Cir. 1993), *cert. denied*, 114 S.Ct. 1197 (1994);[37] *United States v. Rice*, 550 F.2d 1364, 1369 (5th Cir.), *cert. denied*, 114 S.Ct. 1197 (1994).[38]

Evaluation of a due process claim of pre-indictment delay after trial not only benefits from sure knowledge of how (to say nothing of whether) the government proved its case, but also from knowledge of what the defense is able to produce. It is settled that, to sustain a claim of substantial prejudice based on lost evidence or witnesses, the defendant must show that "the information . . . could not otherwise be obtained from other sources." *United States v. Beszborn*, 21 F.3d 62, 67 (5th Cir.), *cert. denied*, 115 S.Ct. 330 (1994) (reversing pretrial dismissal based on due process claim of pre-indictment delay). *See also*

---

[37] In *Robinson*, the habeas petitioner claimed that the post-indictment delay prejudiced him because he lost two witnesses, one having died and the other no longer locatable, who "would have corroborated the 'alibi' he presented at trial." We rejected this claim, stating, "By the trial's end, however, the prosecution had managed to blow so many holes in Robinson's alibi that the only effect their testimony would have had would be to have transformed Robinson's alibi from an incredibly tall tale to just a tall one." *Robinson*, 2 F.3d at 571.

[38] In *Rice*, in rejecting a pre-indictment delay claim, we observed, concerning the defendant's claim (pretrial) that the delay had allowed the government to procure evidence against him, that at trial "[n]o such later acquired evidence was ever offered against any of the defendants." *Rice*, 550 F.2d at 1369.

21

*United States v. Royals*, 777 F.2d 1089, 1090 (5th Cir. 1985) ("[D]efendant has failed to show that such evidence could not have otherwise been obtained."). Where the due process claim of pre-indictment delay is ruled on pretrial, the defense, which frequently will be in a much better position to know of or unearth such "replacement" defensive evidence, has every incentive *not* to diligently look for or come forward with it. At trial, however, the incentive is precisely the opposite. *Then*, if the evidence is not produced, we can have much more confidence that it could not have been.

There is no way to know that this case will not be a *Townley*. At this stage, any claim that Crouch and Frye will be convicted because of substantial prejudice from pre-indictment delay is purely speculative. For example, Crouch claims that the delay deprived him of the testimony of his father, who died in June 1992, the indictment having been returned in November 1992, and of Tranquillo Gubert, who died in September 1988, both former directors of Delta Savings Association. But Crouch does not claim that either of these individuals knew anything of the charged transactions, only that they would have testified that Gerjes, Delta's president, was in charge of Delta and often misled the board and Crouch. Such testimony is of only attenuated relevance to the charged transactions, and there is no showing that other board members were not available to supply this evidence.[39] As to

_____

[39] Furthermore, a defendant claiming pre-indictment delay must show that any claimed prejudice is attributable to that portion of the delay that is *undue*. *Cf. Walter v. Scott*, 21 F.3d

22

Larry Tschearner, an officer of another involved entity, who died at an unspecified time before the return of the indictment, the claim that he could have impeached expected government witnesses Gerjes and Ferguson is plainly a speculative basis on which to find prejudice pretrial.

Frye's claim respecting the lost "Profit Participation Agreement" is deficient because there is no showing that it contained helpful, material evidence not reflected in the "Memorandum" thereof, which likewise tends to show Frye's intent to work with Ferguson in developing the land. As to the original waiver of notice form, Frye claims that the original is necessary to prove there was no forgery. But this presupposes the government will produce evidence that there was a forgery. This relates to count 18 of the indictment, which alleged false statements to Delta in connection with a loan application, contrary to 18 U.S.C. §§ 1014 and 2.[40] It is apparent that a conviction on count 18 can be

---

683, 688-89 (5th Cir. 1994) (evidence lost before delay became excessive not lost due to excessive delay). Here, there is no basis for finding that, at the time of Gubert's death in 1988, the pre-indictment delay had become *undue* delay.

[40] The presently relevant part of count 18 is as follows:

"C. The said false and fraudulent statements were contained in the purported application for the loan in the name of defendant **MICHAEL J. FRYE**'s corporation, J.M.G. Financial Corporation, and accompanying purported minutes of a meeting of the directors of the defendant's corporation authorizing the defendant to purchase DELTA REO on behalf of the corporation, and were intended by the defendant to be included in the loan file of the sham, nominee loan in order to enable the making of the loan in connection with a 'cash for trash' transaction, to avoid loans to one borrower limitations and to avoid detection by DELTA officials and regulatory examiners of

23

obtained without reference to whether a directors' meeting was actually held, and, further, that whether or not the minutes were forged does not establish whether or not a directors' meeting was held.[41]

In my view, there is simply insufficient evidence to establish with the requisite degree of certainty that if a trial is held Crouch and Frye will be convicted and in that connection will have suffered substantial, actual prejudice from any undue delay.

I respectfully dissent. Moreover, it appears to me that this case should be taken *en banc*.

---

the nature of the nominee loan.
D. The application and corporate minutes were materially false in that they purported to represent the intent of defendant **MICHAEL J. FRYE** that he and his corporation be held liable for repayment of the debt, when the defendants then and there well knew that defendant **MICHAEL J. FRYE** was a mere nominee borrower who believed himself and his company to have no actual liability on the note. Additionally, the corporate minutes were false in that no such directors' meeting actually was held."

[41] Moreover, there was no evidence that any expert had tried and been unable to perform a handwriting analysis on the copy. There was only the testimony of a nonexpert FBI special agent that "there may be some handwriting analysis people that will work with copies, but our people in our laboratory prefer originals." When asked if they would work with copies, he said "I don't know. I doubt it, but I don't know for sure. I don't think they would."

24